[Crim. No. 15296.    Second Dist., Div. Four.    Mar. 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. BARRY BENJAMIN BLOOM, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—Appeal by defendant from an order granting him probation following conviction of possessing marijuana in violation of Health and Safety Code, section 11530, a felony. (Defendant purports to appeal from the ''judgment of conviction,'' but there was none since the court suspended pronouncement of judgment and ordered defendant placed on probation. The order, as such, is appealable. Penal Code, section 1237, subdivision 1; *People* v. *Kraps* (1965) 238 Cal. App.2d 675, 676 [48 Cal.Rptr. 89].)

The appeal is on two grounds: (a) that appellant's admissions and the contraband were products of an unlawful detention and (b) that Health and Safety Code, section 11530 is unconstitutional.

The second contention is the first here discussed. Citing no authority, appellant claims the possession statute is against the due process and equal protection clauses of the federal and California Constitutions and also against their prohibitions of cruel and unjust punishment. He admits similar attacks in this state and elsewhere have been unsuccessful. To bolster this feckless argument he invites our attention to the views of an eastern trial judge who, in an article appearing in a popular monthly magazine, contrasts society's views on tobacco and alcohol, as he sees them, with its views on marijuana. We dispose of the point by citing: *People* v. *Quilon* (1966) 245 Cal.App.2d 624, 629 [54 Cal.Rptr. 294], *People* v. *Marsden* (1965) 234 Cal.App.2d 796, 798 [44 Cal.Rptr. 728] and *People* v. *Widener* (1963) 220 Cal.App.2d 826, 830 [34 Cal.Rptr. 130]. With the views therein expressed, we agree.

As to appellant's first contention, the pertinent facts are simple enough. On February 2, 1968, police officer Malmquist of the Morro Bay Police Department received a report that suspicious juveniles were hitchhiking on Quintana Road. About 5:30 p.m., in the evening but still daylight, he saw appellant Bloom with codefendant Johnson walking southbound on the east side of Quintana Road just south of Kennedy Way, and just across the street from a large bank—shopping center which was set back some distance from the

street. They were carrying bedrolls and a small brown valise but gave no indication they were hitchhiking. Both were slightly unkempt and appellant wore long hair. Malmquist believed they might be runaway juveniles as such frequently passed through Morro Bay ". . . and we have taken them into custody under circumstances very similar to this as run-a-ways." They were of questionable age and Malmquist was unable to tell if appellant and Johnson were 18, 17 or 16 years old. He stopped his police vehicle, got out, walked over to them and asked them to identify themselves. They produced identifications showing each to be at least 18 years old but not residents of San Luis Obispo County. By radio, he requested from the police department and the county sheriff's department a record check for confirmation, to ascertain if any agency had a record that would further identify them; also to see if they were wanted.

While waiting for a return report he asked them a few questions to determine who they were, where they were going, and to put them at ease, so they ". . . wouldn't become nervous . . . while we were waiting for the record check to come back." He was told they went to schools in San Luis Obispo and had started to San Francisco for the weekend. They had gone as far as Cambria and found the hitchhiking was not very good, so decided to return. He asked appellant what he had in the valise and was told they were school books. In a joking manner Malmquist asked appellant, ". . . who he was trying to impress—his parents?" Appellant laughed and replied that was the general idea. Malmquist stated he felt it hard to believe ". . . he would carry school books all the way to San Francisco just to impress his parents" and appellant said, "I'll show you," bending down and unzipping the brown valise and pulling out a book. Malmquist looked down and inside the valise, lying on top of other things, saw a torn paper bag with a cigarette hole burned in it. Visible through the tear was a green vegetable substance which Malmquist, based on past training, believed to be marijuana. He bent down and opened the bag more fully. He immediately told appellant and Johnson they were under arrest for suspicion of possessing marijuana, following which he advised them of their constitutional rights as set forth in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. They said they understood and they appeared, also, to do so.

On questioning, appellant stated he bought the marijuana

in San Francisco a year before but did not smoke it too often as ". . . it kind of interfered with his school work." He said they had last smoked some about an hour before "up near Cambria." Malmquist transported them to the station and booked them. Two packages of cigarette papers and a book of matches were found in the brown paper bag, as well as marijuana seeds at the bottom of the valise. The green vegetable substance was tested and found to be 20.10 grams of marijuana.

· At the police station another officer again fully explained his rights to appellant, who thereafter gave a signed statement.

His preliminary examination took place February 27, 1968. Appellant made objection to the introduction of the marijuana exhibit on the ground it was the product of an unlawful detention, and to the introduction of his signed statement on the same ground. Both objections were overruled and appellant was held to answer in the superior court. His codefendant Johnson, was discharged. After a motion to dismiss was heard and denied, trial began on April 15th. Appellant submitted his case on the evidence received at the preliminary examination, at the same time moving to suppress under Penal Code, section 1538.5, the evidence already mentioned. His motion was denied and the court thereafter found him guilty. While he did not seek a writ of mandate or prohibition after denial of his motion to suppress (Pen. Code, § 1538.5, subd. (a)(1)) he may now appeal (Pen. Code, § 1538.5, subd. (m); *Thompson* v. *Superior Court* (1968) 262 Cal.App.2d 98, 106-107 [68 Cal.Rptr. 530], modified on other grounds.)

■ A police officer, employed to maintain the peace and to prevent crime, has both the right and the duty reasonably to investigate all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. "Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens." *People* v. *Cowman* (1963) 223 Cal. App.2d 109, 117 [35 Cal.Rptr. 528]. In the leading case of *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658] the court stated in part (p. 450): ". . . circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning." (See also: *People* v. *Bird* (1967)

248 Cal.App.2d 307, 309 [56 Cal.Rptr. 501].)　██　Believing as he did that appellant and Johnson might be runaway juveniles, officer Malmquist had a right and a duty to stop them and make inquiry (Welf. & Inst. Code, § 625, subd. (a)).

██　The constitutional guarantees prohibit only those searches which are "unreasonable" (*Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288]).　██　Furthermore, we are not here concerned with a "search" for the reason that it is not a search merely to observe that which is in plain view (*People* v. *Holloway* (1964) 230 Cal.App.2d 834, 839 [41 Cal.Rptr. 325]; *People* v. *Walker* (1962) 203 Cal.App.2d 552, 556 [21 Cal.Rptr. 692]; *People* v. *Quinn* (1961) 194 Cal.App.2d 172, 175 [14 Cal. Rptr. 814]; *People* v. *Ellsworth* (1961) 190 Cal.App.2d 844, 846 [12 Cal.Rptr. 433]).

██　Likewise, we are not concerned with the product of an "arrest." Malmquist merely stopped and detained appellant. There is no contention that such was unlawful. Rather, appellant contends that once Malmquist received identification from the suspects which disclosed they were at least 18 years old, he had no right thereafter to further detain him while waiting for a radio check on the authenticity of the identifications furnished. If, during the course of this delayed release from detention, appellant voluntarily disclosed to Malmquist the marijuana in his valise, appellant contends such disclosure (voluntary though it was) came about during an unlawful detention and therefore should be suppressed as evidence. We do not agree. There was nothing unreasonable about the officer's calling for a check-up on appellant and Johnson or in detaining them a few moments while awaiting a report. There likewise was nothing improper in his questioning of the suspects or in his making the joking statement regarding the school books. The mere fact that the detention occurred during the waning daylight hours is irrelevant since a temporary detention in daylight may be valid (*People* v. *Henze* (1967) 253 Cal.App.2d 986, 989 [61 Cal.Rptr. 545]).

██　Furthermore, "If in response to a reasonable official inquiry, a suspect voluntarily reveals incriminating evidence, he may not later complain that he acted on an implied threat of unlawful conduct of the officers. . . . Picking up what is in plain view and voluntarily discarded by defendant is not a search." *People* v. *Perez* (1966) 243 Cal.App.2d 528, 532 [52 Cal.Rptr. 514].

Appellant's statements to officer Malmquist after his formal

arrest and notification of his *Miranda* rights, likewise were admissible in evidence as was his written statement (the contents of which do not appear in the record) later given to another officer.

By virtue of the foregoing the order placing appellant on probation is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.