[Civ. Nos. 37458, 37609. Second Dist., Div. Three. Feb. 16, 1971.]

KIMBERLY PENDERGRAFT, Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

(Two Cases.)

## COUNSEL

Harry E. Woolpert for Petitioner.

Bennett Kerns, A. L. Wirin, Fred Okrand and Laurence R. Sperber as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Real Party in Interest.

## OPINION

**FEINERMAN, J.**\*—Petitioner is charged with possession of marijuana (Health & Saf. Code, § 11530), and possession of dangerous drugs (Health & Saf. Code, § 11910). The superior court denied his motions to set aside the information (Pen. Code, § 995) and to suppress marijuana and dangerous drug evidence (Pen. Code, § 1538.5), and we issued alternative writs of prohibition.

### STATEMENT OF FACTS

Officers Gregory and Costa were patrolling the north section of San Luis Obispo on the morning of August 27, 1970. At about 7:30 a.m., they reached the 200 block of Santa Rosa Street when they saw the petitioner standing alone next to a road sign. His only observable possession, a green back pack, strapped closed, was "leaned up against a road sign" and he was "eighteen inches to two feet away."

It is a police practice in San Luis Obispo to talk to hitchhikers who appear to be under age, ask them for identification, and advise them of the dangers

---

*Assigned by the Chairman of the Judicial Council.

of hitchhiking. Officers Gregory and Costa believed that the petitioner "looked to be a juvenile" and they alighted from their patrol car and approached him. Officer Gregory asked for identification, and the petitioner produced it. His identification established that he was over 18 years of age.

At this juncture petitioner was asked if he had "any weapons—knives or guns or explosives." He replied that he had "three knives." He was requested to produce them, and he withdrew one pocket knife from his coat pocket and another from his pants pocket. After the officers examined the two knives, they were returned to him. They inquired about the third knife, and the petitioner stated that it was in the pack. Officer Gregory asked if he could see it. Petitioner answered "yes" and walked over and started opening his pack. Officer Costa then asked the petitioner whether he would consent to a search of his pack, and the officer received an affirmative response.

Without looking into the pack, Officer Gregory reached into the small pocket on the underside of the flap and brought out a book and a road map. On reaching into the pocket a second time, he withdrew a "roach clip."[1] Officer Gregory thought he detected a brown residue on the teeth of the clip. The officer then turned his attention to the main part of the pack and pulled out a pair of bluejeans. In the back pocket of the jeans he found a "Corina Mini" cigar box. He indicated that he was not looking for the third knife in that small box, but he did open it and discovered its contents to be two cigars and nineteen hand-rolled cigarettes. Suspecting the cigarettes contained marijuana, the officers ceased the search and called a Sergeant Lunsford on the patrol car radio. The sergeant arrived shortly thereafter, confirmed their suspicions, and instructed them to take the petitioner into custody.

At this point, the petitioner was "patted-down," handcuffed, and was placed in the rear seat of the patrol car. The pack was placed in the trunk and not further examined until its contents were inventoried at the police station.

Under the rear seat cushion of the patrol car the officers subsequently found an aspirin tin. The circumstances caused them to believe that it was placed there by petitioner, inasmuch as they had inspected the vehicle shortly before apprehending him. The tin contained, in tinfoil, two orange tablets and three white pills. The police chemist's report eventually showed

---

[1]Officer Gregory testified that a "roach clip" was physically similar to an alligator clip used by electricians for electrical wiring.

the cigarettes contained 13 grams of marijuana; the tablets, .13 grams of LSD; and the pills, .16 grams of amphetamine.

Officer Gregory testified that throughout the period of street detention the petitioner appeared somewhat nervous and uneasy, but not more so than 50 percent of other persons stopped and questioned by the officers. The petitioner did not make any furtive motions while under observation and did not appear to be under the influence of drugs or alcohol. Until the officers discovered the "roach clip," they perceived nothing that caused them to believe the pack contained contraband. Officer Gregory further stated that he was not apprehensive of being attacked by the petitioner during the period of time he was in contact with him.

### WAS THE INITIAL DETENTION LAWFUL?

"Circumstances short of probable cause may justify stopping a pedestrian for further investigation [citation], but before an officer detains an individual for questioning by means of physical force or a show of authority, he 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' [Citation.]" (*Cunha* v. *Superior Court,* 2 Cal.3d 352, 355-356 [85 Cal.Rptr. 160, 466 P.2d 704].)

". . . [A] detention based on 'mere hunch' is unlawful [citation], even though the officer may have acted in good faith [citation]. There must be a 'rational' suspicion by the peace officer that some activity out of the ordinary is or has taken place . . . some indication to connect the person under suspicion with the unusual activity . . . [and] some suggestion that the activity is related to crime. [Citation.] Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. [Citations.]" (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12].)

Considering the absence of suspicious activities by the petitioner,[2] and the time of day, we have reservations about the lawfulness of the initial detention. However, the trial court found that Officer Gregory believed that the petitioner was a runaway juvenile. In the light of that finding, we have concluded Officer Gregory had a right and a duty to stop the petitioner and make an inquiry as to his age. (*People* v. *Bloom,* 270 Cal.App.2d 731, 735 [76 Cal.Rptr. 137]; Welf. & Inst. Code, § 625, subd. (a).)

---

[2]Vehicle Code section 21957 prohibits hitchhiking "in a roadway." Although the police officers stated that the petitioner was "hitchhiking," there is no evidence that the petitioner was in a roadway. Moreover, at and after the officers' visual contact with the petitioner he was immobile and made no gestures or other signs indicating he wanted a "lift."

## WAS THE STREET DETENTION
## UNREASONABLY PROLONGED?

■ ". . . [J]ust as a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope [citation], so may an investigatory detention exceed constitutional bounds when extended beyond what is reasonably necessary under the circumstances which made its initiation permissible." (*Willett* v. *Superior Court*, 2 Cal.App.3d 555, 559 [83 Cal.Rptr. 22].)

No hard and fast rule can be formulated for determining the reasonableness of the period of time elapsing during a detention. The dynamics of the detention-for-questioning situation may justify further detention, further investigation, search, or arrest.[3] The significance of the events, discoveries, and perceptions that follow an officer's first sighting of a candidate for detention will vary from case to case.[4] ■ Nevertheless, in determining the reasonableness of further detention, favorable answers, observations, or perceptions must be regarded by the detaining officer as suspicion-allaying, rather than suspicion-heightening.

In this case Officers Gregory and Costa were shown acceptable evidence of the petitioner's age. Although they were satisfied, they kept fishing. It is our belief they did so without a license, for the detention was unlawfully continued after any lawful purpose had passed.

■ The People attempt to justify the search of the petitioner's pack on the ground that the evidence was lawfully obtained pursuant to his valid consent. In *People* v. *Lingo*, 3 Cal.App.3d 661 [83 Cal.Rptr. 755], the record disclosed a situation wherein a detention was unlawfully continued after any lawful purpose had passed for the sole purpose of asking a question, and conducting a search, based on pure hunch or on mere routine police practice. In *Lingo*, the reviewing court reasoned as follows: "Once the officers here had detained defendant beyond the time necessary to

---

[3]In *People* v. *Superior Court*, 273 Cal.App.2d 459 [78 Cal.Rptr. 153], the defendant was detained to be cited for hitchhiking on a roadway in violation of Vehicle Code section 21957. In response to a question, the suspect asked the officer to hold his (the detainee's) cigarette. The cigarette turned out to be a marijuana cigarette. In that instance, we held that the officer's continued curiosity was reasonable and was reasonably pursued to the point of arrest for possession of marijuana. "If in response to a reasonable official inquiry, a suspect voluntarily reveals incriminating evidence, he may not later complain that he acted on an implied threat of unlawful conduct of the officers." (*People* v. *Perez*, 243 Cal.App.2d 528, 532 [52 Cal.Rptr. 514].)

[4]In *Willett* v. *Superior Court*, *supra*, the court held that it was an impermissible intrusion upon the defendant's security to detain him for 40 minutes to make a record check, absent any suspicious circumstances other than a motor vehicle equipment violation.

perform their legitimate functions, he was illegally detained and his status was the same as that of the defendant in *People* v. *Moore* (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], where the Supreme Court held that interrogation and a request to submit to a search, during a detention not based on any legitimate grounds, was unlawful and barred the use of the information thus secured." (*People* v. *Lingo,* 3 Cal.App.3d 661, 664-665 [83 Cal.Rptr. 755].) We reach the same conclusion in the case at bench.

The alternative writs of prohibition heretofore issued are discharged. Let a peremptory writ of mandate issue directing the respondent superior court to suppress the evidence consisting of 19 cigarettes containing 13 grams of marijuana, 2 orange tablets containing .13 grams of LSD, and 3 white pills containing .16 grams of amphetamine.

Ford, P. J., and Allport, J., concurring.