42 Cal.App.3d 892 (1974)
117 Cal. Rptr. 277
In re FRANCIS W., a Person Coming Under the Juvenile Court Law.
BRIAN L. FISCHER, as Chief Probation Officer, etc., Plaintiff and Respondent,
v.
FRANCIS W., Defendant and Appellant.
Docket No. 2238.
Court of Appeals of California, Fifth District.
October 31, 1974.
*896 COUNSEL
Mark Franich, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
BROWN (G.A.), P.J.
One of the key issues in this case is whether the juvenile court in a hearing on a supplemental petition charging new offenses, filed pursuant to Welfare and Institutions Code sections 775-778, must accord a minor the same constitutional protections to which he is entitled upon an original petition. Apparently no case has passed upon this precise point.
Francis W., a minor, was adjudged a ward of the juvenile court on October 31, 1972, and placed on probation. At review hearings on April 2 and November 5, 1973, he was continued in that status.
The issues herein arise by reason of a supplementary petition filed by the probation department on January 18, 1974, in which it was recommended that the previous disposition be modified because the minor allegedly (1) was found in possession for sale of cocaine (Health & Saf. Code, § 11351) on January 17, 1974 (count I), (2) received stolen property (Pen. Code, § 496, subd. 1) on January 17, 1974 (count II), (3) escaped from the Robert K. Meyers Boys Ranch in December 1973 (count III), and (4) committed a burglary (Pen. Code, § 459) on January 10, 1974 (count IV).
In a contested jurisdictional hearing the juvenile court found the allegations of the petition true as to counts III and IV (escape and burglary) and *897 not true as to counts I and II (possession for sale of cocaine and receiving stolen property).
In a separate dispositional hearing, the minor was continued as a ward of the juvenile court and ordered committed to the California Youth Authority.

NATURE OF THE SUPPLEMENTAL HEARING
At the jurisdictional hearing the court admitted evidence which is argued by appellant to have been illegally seized, admitted an allegedly illegal confession and admitted an admission with respect to count III taken in violation of the minor's Boykin-Tahl rights. (1a) The court in this supplemental proceeding in fact complied with the bifurcated adjudicatory hearing requirements mandated for original proceedings by In re Gladys R. (1970) 1 Cal.3d 855, 859 [83 Cal. Rptr. 671, 464 P.2d 127]; however, respondent argues that a proceeding in the juvenile court based upon a supplementary petition requesting modification of a prior disposition is in the nature of a dispositional hearing, not a jurisdictional hearing, and therefore the constitutional protections set forth in In re Gault (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428] and its progeny do not apply. (See In re Winship (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; In re Roderick P. (1972) 7 Cal.3d 801, 810 [103 Cal. Rptr. 425, 500 P.2d 1]; Joe Z. v. Superior Court (1970) 3 Cal.3d 797, 801-802 [91 Cal. Rptr. 594, 478 P.2d 26]; In re Mary B. (1971) 20 Cal. App.3d 816, 820 [98 Cal. Rptr. 178]; In re Michael M. (1970) 11 Cal. App.3d 741 [96 Cal. Rptr. 887]; In re Robert T. (1970) 8 Cal. App.3d 990 [88 Cal. Rptr. 37]; In re M.G.S. (1968) 267 Cal. App.2d 329 [72 Cal. Rptr. 808].) We do not agree.
At any time during the period of continued jurisdiction over a minor the court may change, modify or set aside any order it has previously made with respect to him. (Welf. & Inst. Code, § 775.) The statutory law is silent on the issue of the nature of a hearing based on a supplementary petition. (Welf. & Inst. Code, §§ 775-778.) (2) However, the courts have inherent power to adopt any suitable method of practice if the procedure is not specified by statute or by rules of court (Joe Z. v. Superior Court, supra, 3 Cal.3d at pp. 801-802); this is necessarily true when the procedure is essential to conform to the requirements of due process mandated by the Constitution.
(1b) It is settled that during juvenile delinquency adjudicatory hearings pursuant to an original petition the standard of proof is proof beyond a reasonable doubt (In re Winship, supra, 397 U.S. 358, 369 [25 L.Ed.2d 368, 378, 90 S.Ct. 1068, 1075]), that at such hearing the minor is entitled to certain fundamental rights, including notice, counsel, confrontation and *898 cross-examination and a right against self-incrimination (In re Gault, supra, 387 U.S. 1, 34-57 [18 L.Ed.2d 527, 550-563, 87 S.Ct. 1428, 1447-1459]; see Welf. & Inst. Code, § 702.5), that he is entitled to the benefits of the exclusionary rule (In re Robert T., supra, 8 Cal. App.3d 990), to the Miranda warning (Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; In re Roderick P., supra, 7 Cal.3d at p. 810) and, prior to an admission, to be advised of his Boykin-Tahl rights (Boykin v. Alabama (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; In re Tahl (1969) 1 Cal.3d 122 [81 Cal. Rptr. 577, 460 P.2d 449]).
The courts in these cases have emphasized that an original juvenile proceeding is quasi-criminal in nature; because the result of such a hearing may be a finding that the alleged criminal conduct is true, resulting in a substantial loss of personal freedom, fundamental notions of due process and fairness require the protections referred to.
Precisely the same reasoning applies in the case at bench, where a supplementary petition charges acts which, if they were charged in an original petition, would require these protections and would constitute a crime if committed by an adult (In re Winship, supra, 397 U.S. at p. 368 [25 L.Ed.2d at pp. 377-378, 90 S.Ct. at p. 1074]), and the disposition results in a substantially more restrictive punishment. In this context, we see no basis in reason to distinguish between an original and a supplementary proceeding and conclude that on the supplementary petition the court correctly followed the procedure established for original proceedings under Welfare and Institutions Code sections 602 and 701.[1] Thus at the adjudicatory phase the appellant was entitled to the same panoply of constitutional protections that he would have been entitled to on an original petition.[2]
Turning to the merits of the controversy, the facts are: On January 17, 1974, at 2:50 a.m., Officer Louis Price of the Merced Police Department observed what he believed to be three juveniles riding in a vehicle along the street. Officer Price testified that he initially stopped the vehicle in which appellant was riding because the vehicle appeared to contain "three white males that appeared to be juveniles and the fact that it was the late hour, somewhat after curfew."
He stopped the vehicle and asked for identification from the three occupants of the car. The driver, Smallwood, gave the officer his driver's *899 license, and the other two occupants (including Francis W.) identified themselves verbally. At that time Francis W. falsely identified himself as James Counts, 17 years old. He was in fact 15 years of age. The other passenger was Leonard R. Cosirog, 17 years old. The driver, Smallwood, was 18 years old.
Due to the fact that it was raining, Officer Price asked the driver of the vehicle to go with him to the patrol unit to talk. At this time, the driver was informed that he was in violation of a Merced City Code ordinance which made it unlawful for an adult to aid a minor in violating the curfew ordinance. Driver Smallwood was thereafter arrested and booked for this offense, but he was later discharged without prosecution.
After the conversation in the patrol unit, Smallwood was taken back to his car, and Officer Price then asked Francis W. (the minor) and Cosirog to accompany him to the patrol unit. At this time, Officer Price noticed that there was a brown shopping bag (which appeared to be about one-half full) in the back seat next to Francis W. The officer also observed a wallet on the floorboard. The two minors then went to the patrol unit with Officer Price, where both minors admitted to having been arrested in the past for burglary.
While the minors were still seated in the patrol unit, the officer recontacted driver Smallwood and advised him that his passengers had been arrested in the past for burglary. Officer Price then asked Smallwood if he could search the car, and Smallwood consented. The officer looked inside the brown paper bag and found 57 Granny Goose meat snacks. Counsel for Francis W. and counsel for the People stipulated at the hearing that a burglary occurred at the Granny Goose plant in Atwater, near Merced, on January 10, 1974, in which meat snacks of the description found in the sack were stolen. There was no admission of the burglary on the part of Francis W. while he was in the patrol unit.
The minor, Francis W., was then taken to the Merced Police Department and, after being advised of his Miranda rights, admitted that he had stolen the meat snacks from the Granny Goose plant by an actual break-in. Officer Price also examined the wallet which was taken from the car and in it discovered a small quantity of cocaine.

INITIAL DETENTION
(3) Circumstances short of probable cause for an arrest may justify temporary detention of a person by a peace officer for investigation and questioning. (Terry v. Ohio (1968) 392 U.S. 1, 13, 22 [20 L.Ed.2d 889, *900 901, 906, 88 S.Ct. 1868]; People v. Mickelson (1963) 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658].) While such circumstances have not been specifically defined, there are certain guidelines by which a detention may be analyzed. A temporary detention is lawful if: (1) there is a rational suspicion by a peace officer that some activity out of the ordinary has taken place; (2) there is a connection between the person under suspicion and the unusual activity; (3) there is some suggestion that the activity is related to the crime. (Williams v. Superior Court (1969) 274 Cal. App.2d 709, 711-712 [79 Cal. Rptr. 489].)
(4) As was said in People v. Courtney (1970) 11 Cal. App.3d 1185, 1189-1190 [90 Cal. Rptr. 370]: "`"The rationale of all these decisions is that an officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have been so meaningful at the scene."' [Citations.]"
Appellant places primary reliance upon the decision of this court in People v. Horton (1971) 14 Cal. App.3d 930 [92 Cal. Rptr. 666], which struck down as unlawful the detention at 1:15 a.m. by police of a vehicle occupied by a 20-year-old driver and two minors, aged 10 and 15. There was nothing in that case to justify the detention except the late hour and the ages of two of the occupants of the car. An attempt to rely on a Modesto anti-loitering law as evidence of criminality was rejected because by its language it only applied to minors under 18 who "loitered"; the court held that being in a driven automobile was not loitering. Further, it appears that in Horton the officer did not subjectively rely upon this municipal ordinance at the time of the stop. (See People v. Miller (1972) 7 Cal.3d 219, 226 [101 Cal. Rptr. 860, 496 P.2d 1228]; People v. Superior Court (Simon) (1972) 7 Cal.3d 186, 198 [101 Cal. Rptr. 837, 496 P.2d 1205].)
Horton is distinguishable on several grounds. (5) The Merced municipal ordinance in the case at bench[3] is broad enough to prohibit the *901 minors from appearing "on any street, square or public place" at night, whether in a car or not; thus the officer's suspicion of criminal activity by the occupants of the vehicle, that is, violating the ordinance, was reasonable. (People v. Flores (1974) 12 Cal.3d 85, 91 [115 Cal. Rptr. 225, 524 P.2d 353]; Williams v. Superior Court, supra, 274 Cal. App.2d at pp. 711-712; People v. Manis (1969) 268 Cal. App.2d 653, 659 [74 Cal. Rptr. 423]; People v. Henze (1967) 253 Cal. App.2d 986, 988-990 [61 Cal. Rptr. 545].) Further, as distinguished from Horton, the officer here had the subjective belief that the ordinance was being violated (see People v. Miller, supra, 7 Cal.3d at p. 226; People v. Superior Court (Simon) supra, 7 Cal.3d at p. 198) and believed that all three of the occupants were under 18 and in violation of the ordinance. It has been held permissible to stop minors to inquire of their ages when no adult is present. (Pendergraft v. Superior Court (1971) 15 Cal. App.3d 237, 241 [93 Cal. Rptr. 155]; People v. Bloom (1969) 270 Cal. App.2d 731, 735 [76 Cal. Rptr. 137].)
Accordingly, we hold that the combination of circumstances present afforded ample justification for the officer to stop the vehicle for further investigation.
Having detained the appellant and the others for investigation regarding their violation of the curfew ordinance, the officer had a right to continue the investigation until such time as it was completed or the suspicion abated (People v. Superior Court (Acosta) (1971) 20 Cal. App.3d 1085, 1091 [98 Cal. Rptr. 161]; People v. Manis, supra, 268 Cal. App.2d at pp. 661-663), including the right to ascertain the youths' identities, and the right to run a radio check to authenticate their identification (People v. Junious (1973) 30 Cal. App.3d 432, 438-439 [106 Cal. Rptr. 344]; People v. Bloom, supra, 270 Cal. App.2d at p. 735) and to determine why the minors were out so late. During this questioning the appellant admitted having committed prior burglaries.
Officer Price then obtained the valid consent of Smallwood to search the car after advising Smallwood that the two juveniles had been arrested for burglary in the past. The search revealed some meat snacks which had been stolen from the Granny Goose plant at nearby Atwater and a small amount of cocaine in a wallet on the floor. The officer had seen the brown bag in which the meat snacks were located and the wallet at the time he first asked the juveniles to go to the patrol car with him for the purpose of asking them the investigatory questions.
*902 There is no evidence that Smallwood's consent was involuntary, nor did it occur after a long unexplained delay. (See People v. Superior Court (Casebeer) (1969) 71 Cal.2d 265, 274 [78 Cal. Rptr. 210, 455 P.2d 146]; People v. Lingo (1970) 3 Cal. App.3d 661, 663-664 [83 Cal. Rptr. 755].) It is noted that Smallwood assisted in the search. (See Nerell v. Superior Court (1971) 20 Cal. App.3d 593, 599 [97 Cal. Rptr. 702] (overruled on other grounds in People v. Medina (1972) 6 Cal.3d 484, 489 [99 Cal. Rptr. 630, 492 P.2d 686]).) Having validly consented to the search, the probable cause requirement was waived.
It is concluded that the evidence seized from the automobile was properly admitted into evidence.

CONFESSION OF BURGLARY
(6) Appellant was convicted primarily upon the basis of his confession to the burglary at the Granny Goose plant. Appellant contends that he did not knowingly and intelligently waive his Miranda rights (Miranda v. Arizona, supra, 384 U.S. 436), which rights he was entitled to as a minor. (In re Roderick P., supra, 7 Cal.3d at p. 810.)
The officer testified that, prior to being questioned, the appellant was advised of his Miranda rights and that he stated he understood those rights and was willing to talk to the officer.
No testimony or other evidence is referred to by the appellant that would justify a conclusion he did not knowingly and intelligently waive his Miranda rights. Appellant's argument is apparently based solely on the fact that he was 15 years of age. But age alone is not conclusive. (In re Dennis M. (1969) 70 Cal.2d 444, 462-463 [75 Cal. Rptr. 1, 450 P.2d 296]; People v. Lara (1967) 67 Cal.2d 365, 383 [62 Cal. Rptr. 586, 432 P.2d 202].) The record reflects that the appellant did well in school while in custody and that he had substantial prior experience with law enforcement officials. In view of the state of the record, we cannot conclude other than that he knowingly waived his Miranda rights after having been advised of those rights by the officer.
Moreover, the objection was not raised at trial and, under the circumstances, cannot be raised for the first time on appeal. (Evid. Code, § 353; People v. Peters (1972) 23 Cal. App.3d 522, 530 [101 Cal. Rptr. 403]; People v. Myers (1968) 262 Cal. App.2d 307, 310-311 [68 Cal. Rptr. 636].)

*903 SUFFICIENCY OF EVIDENCE TO SUPPORT BURGLARY FINDING
(7a) Appellant argues that there was insufficient proof of the corpus delicti of the crime of burglary independent of his own admission. The contention is meritless for the reason that the corpus delicti was established by a stipulation of counsel in open court that a burglary had occurred on January 10, 1974, at the Granny Goose plant at nearby Atwater, California. The stipulation was made to avoid the necessity of calling representatives of the plant to so testify.
(8) Francis W. was bound by this stipulation, it being settled that a party is bound by a stipulation or admission in open court of his counsel, and, except where a constitutional proscription is involved, he cannot mislead the court by seeming to take a position on the issues and then disputing or repudiating the position on appeal. (People v. Pijal (1973) 33 Cal. App.3d 682, 697 [109 Cal. Rptr. 230]; People v. Peters (1950) 96 Cal. App.2d 671, 674-678 [216 P.2d 145]; People v. Hammond (1938) 26 Cal. App.2d 145, 150 [78 P.2d 1172].) (7b) Once corpus delicti is established by evidence other than the extrajudicial admission of the accused, he may be convicted on his own confession or admission. (People v. Burks (1962) 204 Cal. App.2d 494, 501 [22 Cal. Rptr. 414]; People v. Treggs (1959) 171 Cal. App.2d 537, 544 [341 P.2d 342].)

CAMP ESCAPE CHARGE
(9) The finding that appellant was a runaway from Robert K. Meyers Boys Ranch was based upon his counsel's admission in open court of the truth of the charge. The appellant did not personally admit the truth of the charge, nor was he advised of his Boykin-Tahl rights (Boykin v. Alabama, supra, 395 U.S. 238; In re Tahl, supra, 1 Cal.3d 122). Since the admission of the truth of a penal charge by a minor in a juvenile court proceeding is tantamount to a plea of guilty, the minor must personally make the admission (Pen. Code, § 1018; In re M.G.S., supra, 267 Cal. App.2d at p. 339) and he must be advised of and waive his Boykin-Tahl rights before doing so (In re Mary B., supra, 20 Cal. App.3d at p. 820; In re Michael M., supra, 11 Cal. App.3d at p. 743). Since neither of the requirements was observed in this case, the finding of the truth of count III must be reversed.
However, the commitment to the California Youth Authority will stand inasmuch as it clearly appears that the court committed the appellant to that institution based upon other matters before it, including the conviction of the burglary and his past history of criminality, including robbery, vandalism, public drunkenness and car theft. (Welf. & Inst. Code, § 1736.)
*904 The finding as to count III (escape from the Robert K. Meyers Boys Ranch) is reversed; the order of the juvenile court is otherwise affirmed.
Franson, J., and Thompson, J.,[*] concurred.
A petition for a rehearing was denied November 27, 1974, and the petitions of both parties for a hearing by the Supreme Court were denied December 26, 1974. Clark, J., was of the opinion that the petitions should be granted.
NOTES
[1] This procedure is apparently in accord with current practice. (See Thompson, Cal. Juvenile Court Deskbook, §§ 11.6, 11.8, 11.9, pp. 160-160a, 161.)
[2] This decision is, of course, limited to the facts herein, where the supplementary petition charges new and different criminal acts not included in the original petition upon which an original adjudication has been had.
[3] Section 17.21 of the Merced City Code in pertinent part provides: "It shall be unlawful for any minor under the age of eighteen years to be or appear on any street, square or public place in the city between the hours of 10:00 P.M. of any day and 6:00 A.M. of the following morning.... (Ord. No. 347, § 1; Ord. No. 784, § 1.)"
[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.