Filed 5/16/13; pub & mod. order 6/7/13 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (San Joaquin)

----

| | |
|---|---|
| In re MATTHEW N., a Person Coming Under the Juvenile Court Law. | C070892 |
| THE PEOPLE, | (Super. Ct. No. 68976) |
| Plaintiff and Respondent, | |
| v. | |
| MATTHEW N., | |
| Defendant and Appellant. | |

In November 2011, the minor Matthew N. (then 14, born Dec. 1996) admitted allegations that he came within the jurisdiction of the juvenile court because he had committed a lewd act in violation of Penal Code section 288, subdivision (a) between October 2010 and March 2011.  (Welf. & Inst. Code, § 602.)[1]  The San Luis Obispo

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

County juvenile court transferred the case to San Joaquin County (the residence of the minor's mother) for disposition. (§ 750 [juvenile court may transfer case to county of residence *after* finding jurisdiction over delinquent]; *In re Brandon H.* (2002) 99 Cal.App.4th 1153, 1156 (*Brandon H.*).) In the dispositional order, the court declared the minor its ward, removing him from the custody of his parents and committing him to the care of the probation office, which identified a group home as his proper placement.

On appeal, the minor contends the juvenile court erred in refusing to allow him to withdraw his admission of jurisdiction because he was not competent to stand trial at that point in time. He alternately claims his prior attorney at the time of his admission was incompetent because he did not express a doubt about the minor's competence to the juvenile court despite substantial evidence of incompetence. The minor also faults the juvenile court for failing to hold a hearing on his suitability for deferred entry of judgment (§ 790 et seq.) before accepting his second admission and transferring the case. Finally, the minor maintains he is entitled to additional custody credits for the period between the dispositional hearing and his transfer to the group foster home (a point the People concede). We shall reverse the dispositional order and remand with directions to grant the motion to withdraw the admission if the minor renews it (which moots the rest of the minor's arguments).

## FACTUAL AND PROCEDURAL BACKGROUND

The facts establishing the violation of the Penal Code are not material to the issues on appeal for the most part. The parties stipulated to use of the police reports as a factual basis for the admission. In accord with the practice of the parties on appeal, we rely on the *summary* of these reports in the dispositional report of the probation officer.

In March 2011, the minor was a friend of the older brother of an eight-year-old girl and a six-year-old boy. Both children told their parents that the minor engaged in lewd behavior with them. (The juvenile court dismissed the count involving lewd acts

2

with the boy in accepting the minor's second admission, but the minor agreed to allow the court to consider the facts of the dismissed count in connection with the disposition of the case. Conduct with the girl included the minor rubbing his penis on her bare buttocks; asking if she knew how to make a baby; lying atop her while rubbing his penis against her vagina; penetrating her vagina with his penis; and putting his tongue in her mouth. The minor told police he had numerous uncoerced physical contacts with the girl that were not sexually motivated but resulted in him ejaculating; he did not consider this doing anything "nasty" with her. The boy initially reported that the minor had fellated him while the boy had been sleeping, but when police interviewed the boy, he denied any contact with the minor (instead asserting that it was his sister who had touched his penis). The minor denied any contact with the boy.

The procedural background, by contrast, is closely interwoven with the minor's argument. We must provide it with some detail.

In October 2011, a clinical psychologist evaluated the minor in order to perform a risk assessment of his living with his younger sisters (five and 13 years old) in the home of his mother, "in addition to evaluating [his] current mental state and what treatment . . . might . . . reduce his risk for re-offense." (§ 741 [juvenile court may order psychological evaluation to assist in treatment of delinquent].) His mother believed the minor was very immature for his age, and the psychologist confirmed that the behavior and demeanor of the minor was more like a child four or five years younger. The minor had told the psychologist he experienced auditory hallucinations and believed he had ghosts haunting him, which she thought may or may not indicate signs of schizophrenia. He had thought about suicide on three occasions, and said these thoughts were predominating. Nonetheless, the minor appeared fully oriented as to person, place, time, and situation throughout the interview. "When asked about the circumstances of the alleged offense, Matthew [provided] disorganized accounts of incidents in which he was rough-housing or

3

playing with the victims, but denied any deliberate sexual contact or arousal, even though he admitted to having ejaculated after rubbing up against one of the victims. He did not appear agitated or defensive in protesting his innocence, and in fact his facial expression did not change throughout." He otherwise was unwilling to discuss his sexual interests or attitudes, denied being sexually active, and did not recognize any need for treatment as a sex offender or the danger he might present to his own youngest sister; in general, he demonstrated poor insight and judgment. It became increasingly difficult during the interview to obtain coherent answers from him, which was consistent with either intense anxiety, or with a thought disorder. The minor told the psychologist that he had received medication for attention deficit hyperactivity disorder (ADHD) from age nine to age 12, which was stopped to evaluate his performance without medication. The psychologist thought this might be a cause at least in part of his distractibility.

The psychologist withheld any diagnosis of an existing mental disorder, because more investigation was necessary to determine if the minor's irrational thoughts were psychotic or only a function of beliefs that his father instilled in him. The report recommended monitoring and treatment for depression and suicidal thoughts (and to evaluate whether the minor would benefit from resumed medication for ADHD), a determination of whether the minor had himself undergone sexual abuse, and further exploration of the possibility of a developing psychosis. The report also concluded that it would not be appropriate to place the minor with his mother; he needed a secure setting where he could obtain treatment to prevent reoffending, which was a serious risk in light of his denial of committing any offenses.

At a hearing before Judge Ginger Garrett (San Luis Obispo County) in early November 2011, the minor admitted the allegations of both counts on the condition that he could withdraw his admissions if he was found unsuitable for a deferred entry of judgment pursuant to section 790 et seq. after a hearing scheduled for later in the month.

4

A week later, the probation officer reported to the court that she had determined the minor's mother lived in San Joaquin County (the father, with whom the minor had previously been living, was in custody with pending criminal charges); given the recommendation for a secure treatment facility in the psychologist's report, the probation officer advised a transfer of the case to San Joaquin County for disposition in order to find a facility close to the mother's home, which would be in the interest of the minor (as required under section 750 for transfer).

At a hearing the next day before Judge Richard Curtis (that the prosecution and defense counsel had requested after receiving the probation recommendation), the parties stated that in light of the residency issue, they had agreed the minor would withdraw the admissions conditioned on deferred entry of judgment. The minor instead would admit only one count of the petition.[2] Judge Curtis then accepted the minor's admission.

At the scheduled dispositional hearing in San Joaquin County in early December 2011, the minor's newly appointed defense attorney expressed "substantial doubts" about both present competence of the minor, as well as his competence at the time of the entry of the admission to jurisdiction (which would be the basis for a motion to withdraw the admission). Counsel made reference to the October 2011 psychological report description of the seemingly delayed mental development of the minor. Counsel was willing to defer consideration of the motion to withdraw until after addressing the minor's present competence. The court appointed a psychologist to evaluate the minor's competence.

At the outset of the competence report, the psychologist noted that the minor's description of the six-year-old boy as a "friend and playmate . . . [says] something about

---

[2] This disqualified him from consideration for deferred entry of judgment. (§ 791, subd. (a)(3); *In re T.J.* (2010) 185 Cal.App.4th 1504, 1511.)

5

Matthew's maturity level." The report concurred that the minor was "very immature for his age, both psychologically and socially. He even looked younger than his years physically." The minor seemed very naïve psychosexually as well, denying any interest or participation in sexual activity. The minor also seemed unaware of the exploitive nature of sexual activity with the victim, considering it merely "against the law." He denied ever being a victim of molestation. He showed signs of ADHD during the interview, and mentioned that he had been evaluated for special education classes but did not qualify. The report did not agree that the minor was suicidal, or possibly psychotic (the beliefs in ghosts and spirits being attributable to his father, which are "commonly held" by "millions of others" in "different parts of the world"). His thinking was neither irrational nor disorganized, and his test scores indicated average or below average abilities to read and write without any significant deficits. In an anxiety test, the minor scored in the 99th percentile, which might explain the peculiarities in his thinking and behavior that he displayed in his previous evaluation.

On the issue of the minor's competence to stand trial, the report listed a host of basic legal concepts about which he lacked understanding,[3] summarizing these as demonstrating that he was "close to being competent but not quite there. What he lacked most was a better procedural and factual understanding of a trial process and what a plea bargain was. This Matthew could obtain by completing a competency training class."

---

[3] While the minor had a rational understanding of the charges against him (that he committed some sort of sexual offense), he did not understand the distinction between a misdemeanor and felony and was unaware of his potential punishment. He knew the public defender was his advocate, but did not know the role of the prosecutor. He did not know what would happen if he did not admit the allegations, and did not understand the process of a trial or who determined the outcome. He did not understand the privilege against self-incrimination (and thus might not have been properly advised before speaking to the police, a fact absent from the police reports), or what was at stake in waiving his trial rights.

On receipt of the report, the juvenile court held a hearing at which the prosecutor refused to stipulate to a finding of incompetence and defense counsel would not assent to competence training absent the stipulation. The juvenile court suspended proceedings and referred the minor for competence training without the stipulation, pending a trial on competence to be set at a later date.

In late January 2012, the parties stipulated to submitting the issue of competence on the December 2011 evaluation; the juvenile court (Judge Roger Ross presiding) found the minor was not competent to proceed as a matter of developmental delay or lack of maturity (but not on the basis of any mental disorder or disability), so competency training should continue. The juvenile court rejected defense counsel's assertion that this finding should apply to the minor's competence in November 2011, because the court "[did not] know that" in light of the absence of any mention of his lack of understanding in the record of the proceedings in the transferring county, and "his competency today might be different than it was a month ago."

Defense counsel filed a motion to withdraw the minor's admission on the ground that he was not competent to enter a knowing and intelligent admission at that time. Counsel also asserted that prior counsel was incompetent in failing to determine this. In the supporting declaration, defense counsel asserted that his conversations with the minor confirmed the October 2011 evaluation, in that the minor was "demonstrably child-like . . . and was unable to carry on a meaningful conversation about the mere basics of his legal situation, the rights and procedures involved." The minor also filed a declaration, in which he attested to only brief meetings with prior counsel, who did not explain what was happening, and the minor had simply initialed the admissions form at counsel's direction without reading them.

The minor successfully completed the legal competency training course in late February 2012. His evaluator believed he understood the process and now had the ability

to assist counsel in a rational manner in his own defense. The parties appeared at a hearing the next day and stipulated that the minor had attained competence, at which point the juvenile court (Judge Stephen Scott presiding) ordered the proceedings reinstated and set the motion to withdraw the minor's admission for March 2012.[4]

At the hearing on the motion to withdraw the minor's admission (Judge Scott again presiding), defense counsel asserted that the minor "was completely ignorant about what had transpired in San Luis Obispo County and why exactly he was here." Counsel again adverted to the consistent evaluations of the minor's immaturity. He further argued that prior counsel was simply indifferent to whether the minor understood the proceedings. He reiterated his previous proposition: "This child is 14. If he is not competent in January of this year [2012], then he wasn't competent in October [2011] and it's not just an extrapolation of that fact. If he doesn't have the sophistication, the knowledge, the intelligence, the vision in January, he can't possibly at his age have had it in October of last year." The prosecutor objected to the absence of any testimony from the prior attorney or the psychologists who evaluated the minor, and focused the juvenile court on the written waivers from the admission.

The juvenile court, relying solely on the written waivers that the minor had executed in connection with his admissions (and the certifications of prior counsel and the transferring juvenile court that the minor had been advised of his rights and

---

[4] The prosecutor incorrectly opposed entertaining the motion on the ground that the transferring county (San Luis Obispo) was the proper venue in which to make the motion to withdraw the admission of jurisdiction because the percipient witnesses of the minor's competence at that time were located there. (*Brandon H.*, *supra*, 99 Cal.App.4th at p. 1156 [once a case is transferred upon finding of jurisdiction, "[t]here is no statutory provision for a transfer *back* to the original court" or for joint jurisdiction of any kind; thus, second court erred in refusing to consider motion to withdraw admission].) Apparently, the juvenile court disregarded the prosecutor's assertion after reviewing *Brandon H.* at the request of defense counsel.

intelligently understood the nature and consequences of the proceedings), found the minor had not met his burden of establishing good cause to withdraw his admission, and set the matter for disposition (which, as we noted above, resulted in a finding of wardship and a placement in a group foster home).

## DISCUSSION

Penal Code section 1018, which governs the standards for withdrawal of a plea in criminal cases, is not expressly applicable to admissions in juvenile court, and it does not have a statutory counterpart in delinquency proceedings. However, the *principles* that underlie the statute have been imported into delinquency proceedings in other respects. (*In re Francis W.* (1974) 42 Cal.App.3d 892, 903; *In re M.G.S.* (1968) 267 Cal.App.2d 329, 339 [both importing requirement that delinquent must personally enter plea]; cf. *In re Jermaine B.* (1999) 69 Cal.App.4th 634, 640 [importing Pen. Code, § 1192.5 with respect to plea bargains].)

Ignorance or any other factor that prevents a knowing and intelligent decision to enter a plea (see *People v. Mosby* (2004) 33 Cal.4th 353, 359 [listing necessary advisements to guarantee knowing and intelligent decision]) would thus be good cause to allow a minor to withdraw an admission if supported with clear and convincing evidence, a determination within the juvenile court's informed discretion after *due* consideration of the relevant evidence. (*People v. Cruz* (1974) 12 Cal.3d 562, 566; *People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.)

It is true, as Judge Ross mused, that a lack of competence stemming from a *mental disorder* at one point in time is not probative of a different point in time. (E.g., *People v. Blair* (2005) 36 Cal.4th 686, 714 [psychiatric commitment 15 years before trial did not give trial court a reasonable basis for a doubt about competence].) But we are here concerned with a *developmental* competence, which concerns a *linear* process rather than discrete points in time. Defense counsel's central argument was the minor's unusual

9

immaturity for his age (as his mother and both psychologists attested) and his inability to comprehend the legal concepts involved in the trial process following the transfer of the case (as both trial counsel and the competency report attested) until *after* he underwent several weeks of instruction. This combination—unusual immaturity and inability to understand the legal concepts involved—meant there was no reasonable basis to conclude that the minor somehow possessed the ability to comprehend the *earlier* proceedings in November 2011 such that he could consult with his attorney regarding his defense with a reasonable degree of rational understanding. (*Timothy J. v. Superior Court* (2007) 150 Cal.App.4th 847, 860-861 [incompetence may be matter of mental immaturity as well, in addition to mental disorder or developmental disability].) Judge Scott's failure to give *any* express consideration to this argument (whether on the same basis as Judge Ross or not) does not indicate an informed exercise of discretion.

It was insufficient for the juvenile court to base its ruling solely on the written and verbal advisements that the minor received in the course of soliciting his waivers or his acknowledgments (to which he invariably responded with a simple "yes"), along with the form attestations of court and counsel that they *believed* the minor understood these advisements without further explanation of their meaning (even though both were aware from the October 2011 psychological report that the minor might be unusually immature). The problem was latent, and none of this established affirmatively that the minor actually had an understanding of what had happened, or any potential defenses he might have been able to raise (such as a lack of proper advisements before police questioning). This is akin to going through the rote litany of advisements with a defendant, eliciting monosyllabic responses, and then later discovering he had only a marginal fluency in English about which no one questioned him. It is beside the point, as the People urge, that the minor did not have a mental disorder or disability and was *capable* of having an understanding of the legal concepts involved in admitting the

10

allegations—it is the absence of any evidence he in fact *possessed* this understanding of the legal concepts involved before he underwent competency instruction that is the problem. While the minor need not "pass a civics test regarding the juvenile court system" to be competent (*In re Alejandro G.* (2012) 205 Cal.App.4th 472, 475, 480), he still must be able to understand the nature of the rights he is waiving and the consequences of his actions.

We therefore must vacate the dispositional order and remand the matter. It may be that with the passage of time the minor no longer desires to withdraw the admission because he has benefitted from his placement. We therefore will condition our reversal on the minor's renewing his motion to withdraw, at which point the juvenile court shall grant the motion. In light of this resolution, we do not need to decide if prior counsel was ineffective for failing to explore whether the minor was competent to admit jurisdiction. It also moots the issues of the failure to give any further consideration to deferred entry of judgment before transfer, or to credit the minor with his additional period in custody after the entry of the dispositional order.

## DISPOSITION

The dispositional order is vacated and the matter remanded to the juvenile court with directions to grant a renewed motion to withdraw the minor's admission of jurisdiction. If he does not act to withdraw his admission within 60 days of the filing of the remittitur in the juvenile court, the court may reissue its dispositional order.

                                    BUTZ              , J.

We concur:

      BLEASE              , Acting P. J.

      MAURO              , J.

11

Filed 6/7/13

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(San Joaquin)**

----

| | |
|---|---|
| In re MATTHEW N., a Person Coming Under the Juvenile Court Law. | C070892 |
| | (Super. Ct. No. 68976) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION |
| MATTHEW N., | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

APPEAL from an order of the Superior Court of Sacramento County, W. Stephen Scott, Judge. Vacated and remanded.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

THE COURT:

It is ordered that the opinion filed herein on May 16, 2013, be modified as follows: In the first full paragraph of page 2, prior to the last sentence, which begins "We shall reverse", insert the following sentence:

> Under the facts presented to the juvenile court, we conclude that evidence of the minor's subsequent unremediated developmental incompetence precludes a finding that his earlier admission of the jurisdictional allegations was knowing and intelligent, notwithstanding his contemporaneous written execution of acknowledgments and waivers of his constitutional rights.

> There is no change in judgment.

The opinion in the above-entitled matter filed on May 16, 2013, was not certified for publication. For good cause, it now appears that the opinion, as modified herein, should be certified for publication in the Official Reports, and it is so ordered. (**_CERTIFIED FOR PUBLICATION._**)

BY THE COURT:


      BLEASE      , Acting P. J.


      BUTZ      , J.


      MAURO      , J.