[Crim. No. 6616. Third Dist. Nov. 14, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
DAVE NOVERTO ROBLES et al., Defendants and Respondents.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Marjory Winston Parker and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Appellant.

Robert N. Chargin, Public Defender, Ann M. Chargin, Assistant Public Defender, and Robert E. Green for Defendants and Respondents.

## OPINION

**PERLUSS, J.**\*—This is an appeal by the prosecution from an order of the superior court setting aside an information against defendant Dave Noverto Robles in part and against defendant Edward Ned Bordes in whole pursuant to section 995 of the Penal Code.

On March 13, 1972, one John Haden, a drug user and informant,[1] went to Bordes' residence to see if Bordes had narcotics, but Bordes was not home. The next morning, Haden called Bordes[2] from Lodi and asked him whether he could purchase narcotics from him. Bordes told Haden he had narcotics for sale. Haden then went from Lodi to the police station

---

\*Assigned by the Chairman of the Judicial Council.

[1]Haden was arrested in May 1971, for sale of a narcotic. In July he pleaded guilty to felony possession, received a suspended sentence, and was placed on three years' probation. On January 28, 1972, Haden was arrested for being under the influence of a narcotic. On March 29, 1972 (the preliminary hearing in the instant case was held March 29-30, 1972), he pleaded guilty to a reduced charge and received a suspended 180 days jail sentence. He had operated as a police informant one time previously. In this instance, he was not given Bordes' name by the police, but had heard it from "a few other civilians."

[2]Haden stated it was his own idea to make the telephone call.

in Stockton, where he made a second call to Bordes. The telephone call was monitored by Officer Willard Clair of the narcotics detail. In this conversation, Haden asked Bordes if he had a half spoon of heroin that he could purchase. Bordes answered affirmatively and told Haden to come to his house for the purchase. Haden was given $25 by the police and was skin-searched before he left the station. His car was also searched. A "sack unit," a miniature transmitter, was taped to Haden's stomach.

Haden drove his car to Bordes' residence. Once inside, he asked Bordes about buying the heroin, and Bordes told him that they would have to go to a place on Middlefield Road to get it as he had sold out earlier that morning. Haden then drove Bordes over to the Middlefield Road address. Officer Clair, who had followed Haden and was timing his movements, noted that Haden was inside Bordes' residence only for two minutes.

After arriving at the Middlefield address, Haden waited in the car while Bordes went inside. In a moment or two Bordes came out and waved for Haden to come inside. Bordes then introduced Robles to Haden, and purchases of heroin were made from Robles by both Haden and Bordes. Bordes injected heroin into his arm immediately. After approximately 30 minutes, the three men left the house and entered Haden's car. Haden was to drive Robles to Delta College. Bordes sat in the front seat next to Haden, and Robles sat in the back seat behind Bordes.

The police, who had Haden under surveillance, had heard nothing but static from the transmitter taped to him. They picked up nothing of Haden's conversations with Bordes and Robles.

Just as Haden was slowing down to stop so that Robles could leave the car, Officer Clair, who was following behind in an unmarked police car, flashed his red light and stopped Haden. This was at approximately 2:15 in the afternoon. Officer Clair and his companion, Officer Knief, both left the police car. Officer Clair went toward the passenger side of Haden's car. Bordes alighted from Haden's car and asked Officer Clair "Why were we stopped?" Bordes was wearing a short-sleeved shirt. Officer Clair, who saw puncture marks on Bordes' arm and noticed that his eyes appeared to be constricted, told Bordes that he appeared to be under the influence of a narcotic. He then told Bordes that as a condition of his probation he was searchable at any time or place by a police officer. He took Bordes to the police car, placed him in the rear seat, and checked his eyes with a flashlight. Officer Clair could not detect any response of Bordes' pupils to the beam of light. Bordes was then placed under arrest.

Officer Clair then went over to Robles, who was standing on the sidewalk with Officer Knief. He was wearing a short-sleeved T-shirt. Officer Clair observed needle marks which appeared to be puncture markes on Robles' arms. He looked at Robles' eyes, which appeared to be constricted, and advised him that he felt that he was under the influence of narcotics. Robles was placed in the rear seat of Haden's car, and his eyes were examined with a flashlight. Not detecting any reaction to the pupils, Officer Clair told Robles that he was under arrest for being under the influence of narcotics. A search of Robles incident to his arrest revealed two balloons of heroin.

A complaint was filed charging Bordes and Robles with count 1—violation of Penal Code section 182, subdivision 1, conspiracy to violate Health and Safety Code section 11501; count 2—violation of Health and Safety Code section 11501, sale of heroin; and count 3—violation of Health and Safety Code section 11721, unlawful use of and being under the influence of narcotics. Robles was additionally charged with count 4—violation of Health and Safety Code section 11500, possession of heroin.

The magistrate found that there was reasonable and probable cause to hold defendants on all counts of the information. On hearing defendants' motion under Penal Code section 995, however, the superior court granted the motion as to all counts against both defendants, except count 2, relating to the sale of a narcotic, as against Robles.

There is no controversy about certain aspects of this matter.

It is not contended that the granting of the motion as to count 1 was erroneous, and to that extent the order of the superior court must be affirmed.

Manifestly, on the facts presented, Bordes acted as a go-between and abettor in the sale of heroin by Robles to Haden and is equally chargeable. (*People* v. *Doptis* (1969) 276 Cal.App.2d 738, 742 [81 Cal.Rptr. 314].) Accordingly, we must reverse the superior court's order setting aside count 2 as to Bordes.

The parties differ vigorously, however, with respect to the order setting aside count 3 against both Bordes and Robles (under the influence of narcotics) and count 4 against Robles (possession of narcotics). Their respective positions turn on the propriety of the detention of Haden's vehicle. The prosecution contends that the stop was lawful and thus the arrests were lawful. The defendants contend that the stop was unlawful and thus the arrests were unlawful.

Of course, as would be expected, Haden, the informant, raised no objec-

tion to the stop. He, however, acting in concert with or as the agent of the police, could not consent to the invasion of the Fourth Amendment rights of Bordes and Robles. (See, *Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 100-102 [73 Cal.Rptr. 575, 447 P.2d 967]; *Raymond* v. *Superior Court* (1971) 19 Cal.App.3d 321, 325 [96 Cal.Rptr. 678]; *People* v. *Shipstead* (1971) 19 Cal.App.3d 58, 73 [96 Cal.Rptr. 513].)

Nevertheless, the detention of Bordes and Robles was justified within the standards established by law. In *People* v. *Griffith* (1971) 19 Cal.App.3d 948 [97 Cal.Rptr. 367], it was said at page 950: ■ "While it is well established that circumstances short of probable cause for making an arrest may warrant a temporary detention for purposes of investigation (*Terry* v. *Ohio*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]), before such a detention may be undertaken there must be an objectively reasonable suspicion that something out of the ordinary has taken place, that the activity is related to a crime, and that defendant is connected to the activity. (*Irwin* v. *Superior Court*, 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Henze*, 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].) . . ."

■ The applicable test to determine the validity of a temporary detention is to inquire whether the circumstances are such as to indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of the officer's duties, and the inquiry must be based on an objective perception of events rather than the subjective feelings of the detaining officers. (*Irwin* v. *Superior Court* (1969) 1 Cal.3d 423, 426 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Boyd* (1971) 16 Cal.App.3d 901, 905 [94 Cal.Rptr. 575].)

■ There was sufficient compliance here with such requirements.

Officer Clair heard Bordes tell Haden that he had the narcotics at his house and to come over to buy them. Officer Clair followed Haden to Bordes' residence, but the transmitter taped to Haden did not operate and Officer Clair did not know what transpired. Haden and Bordes left two minutes after Haden arrived at Bordes' house, and they drove to an address on Middlefield Road where Bordes got out. Haden entered the residence on being waved in by Bordes, and they remained for approximately 30 minutes. Thereafter, Haden, Bordes and another person left the residence on Middlefield Road, and Officer Clair observed Haden's car with three people inside driving on Mendocino.

These circumstances created an objectively reasonable suspicion that a sale of narcotics had taken place at Robles' residence on Middlefield Road,

and that Bordes and Robles were connected with the sale, since a purchase was the original purpose of Haden's mission and he and Bordes had left after only two minutes at Bordes' residence, but they had spent 30 minutes at Robles' residence after Haden was taken inside by Bordes.[3]

This, however, was not the reason for the stop that Officer Clair gave at the preliminary hearing. There, he stated that he stopped the vehicle because he was concerned with the informant's safety. Since he also testified that the occupants of the car were sitting normally, that there was no struggle, and that the vehicle appeared to be functioning properly, Officer Clair's stated reason for the stop was without objective factual support. In any event, this reason ceased when the car stopped and Haden emerged unharmed.

Two recent California Supreme Court decisions indicate that probable cause for arrest requires an initial demonstration of a subjective belief by the arresting officer that a particular crime had been committed, and that an arrest cannot be justified on grounds other than those relied upon by the officer. (*People* v. *Miller* (1972) 7 Cal.3d 219, 226-227 [101 Cal.Rptr. 860, 496 P.2d 1228]; *People* v. *Superior Court* (1972) 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205].)

Our concern, however, is not with *arrest* but with *detention,* a brief *stopping in aid of investigation.* Detention, by its very nature, involves a generalized approach within the standards established by law.[1] As above noted, the standards are an objectively reasonable suspicion that something out of the ordinary has taken place, that the activity is related to a crime, and that defendant is connected to the activity. Thus, if an officer were to observe an individual running down the street at night with blood on his clothes, he properly could detain him for investigation to ascertain whether the individual had engaged in criminal activity, notwithstanding that in actuality it ultimately may develop that the blood resulted from a nosebleed. Of course, detention based on "mere hunch" or on events as consistent with innocent activity as with criminal activity is unlawful. (*Irwin* v. *Superior Court, supra,* 1 Cal.3d p. 427.)

Under present California law, the officer could not *arrest* until

---

[3]There was an additional reason to detain Bordes. He apparently was a probationer who, as a condition of probation, had agreed to submit to warrantless searches. (See, *People* v. *Mason* (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630].)

[1]A comprehensive analysis of the difference between arrest and detention is to be found in La Fave, *"Street Encounters" And The Constitution; Terry, Sibron, Peters and Beyond* (1968) 67 Michigan Law Review, pages 40, 73-75. (See also, American Law Inst., A Model Code of Pre-Arraignment Procedure, Proposed Official Draft No. 1 (1972), § 120.1, pp. 131-132.)

he had formed a subjective belief that a particular crime had been committed. He may lawfully *detain,* however, based on an objective perception of events without particularization as to a specific crime.

It follows that it is immaterial what reason for detention, if any, is given by the officer if the objective facts support the validity of the detention.

Robles argues that he was further detained by being ordered out of the car by an officer. The record does not indicate whether Robles left the car voluntarily, but even if he did not, it is established that if an officer stops a motorist under circumstances which justify the stopping, he may take reasonable precautions for his own safety including a request to the occupant of the vehicle to alight. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Knight* (1971) 20 Cal.App.3d 45, 50 [97 Cal.Rptr. 413]; *People* v. *Nickles* (1970) 9 Cal.App.3d 986, 991-992 [88 Cal.Rptr. 763].)

The order of the superior court granting the motion to set aside the informations as to count 1 in the case of both defendants is affirmed. The order of the superior court granting the motion as to counts 2 and 3 in the case of defendant Bordes and as to counts 3 and 4 in the case of defendant Robles is reversed.

Friedman, Acting P. J., and Regan, J., concurred.

A petition for a rehearing was denied December 8, 1972, and the petition of respondent Robles for a hearing by the Supreme Court was denied January 11, 1973.