37 Cal.App.3d 944 (1974)
112 Cal. Rptr. 690
THE PEOPLE, Plaintiff and Respondent,
v.
WILLIAM KENNETH HIGBEE, Defendant and Appellant.
Docket No. 22987.
Court of Appeals of California, Second District, Division Five.
March 14, 1974.
*945 COUNSEL
Richard S. Buckley, Public Defender, Harold E. Shabo, Donald Feinberg, and Ronald B. Davey, Deputy Public Defenders, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Frederick R. Millar, Jr., and Theodora Berger, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ASHBY, J.
Defendant William Kenneth Higbee was charged with and convicted of possession of a concealable firearm by a former felon (Pen. *946 Code, § 12021). After motions to dismiss the case (Pen. Code, § 995) and to suppress the evidence (Pen. Code, § 1538.5) had been denied, defendant submitted the case on the preliminary transcript, with appropriate waivers. He was found guilty and sentenced to 90 days in jail, receiving credit for 62 days already served.

FACTS
(1) On a Saturday, September 9, 1972, at 10 in the morning, Los Angeles Police Department Officer Sergio Robleto was patrolling the 400 block of North Coronado, a high burglary area, in a black and white patrol car. He observed defendant sitting on a motorcycle in the street in front of 427 North Coronado. Its motor was running. The officer drove to the end of the block, which was a dead-end street. He waited for about a minute and a half, which he "felt was sufficient time for somebody who was taking off to leave, unless somebody was waiting for somebody else."[1] The officer drove back to investigate. Defendant was still sitting on the motorcycle with the engine running.
The officer decided to investigate because there were "numerous burglaries and motorcycle thefts and burglaries with motorcycles, persons riding motorcycles, being pulled in that area. I decided that it would be prudent to ask him if he lived in the area, since I had not seen him on any prior occasion." He asked defendant whether he lived in the area; defendant said he lived at 427 North Coronado, the address in front of which he was sitting. The officer asked defendant if he had any identification with that address. Defendant said he did not. The officer then "asked him for his identification in order to check his ID." Defendant produced a driver's license with his picture on it.[2] The officer decided to run a warrant check, which took about 30 seconds. He learned that there were two traffic warrants for defendant. He advised defendant of this, arrested him, and transported him to the Rampart station. As they arrived at the station, defendant said to Officer Robleto, "I might as well tell you, I have a gun hidden."[3] The gun was hidden "behind and below his waistband, behind the buttock." It contained five live rounds. The safety was off and it was ready to be fired.

*947 DISCUSSION
The question on this appeal is whether Officer Robleto's questioning of defendant and the resulting warrant check were reasonable under all the circumstances. We hold that they were.
In People v. Courtney, 11 Cal. App.3d 1185 [90 Cal. Rptr. 370], the officer was patrolling a private university residential area. There had been bombings in the area and there were threats of further bombings. The officer observed an oddly dressed person whom he had never seen in the neighborhood before. When the individual appeared to turn his head as if to avoid a confrontation with the officer, the officer stopped him to ascertain his business and to check his identification. The court stated at page 1190: "Because of the stranger's paucity of identification and his statement that he was headed for the home of one known to have a police record, the officer's decision to detain him while he ran a radio check was proper. (See People v. Bloom, 270 Cal. App.2d 731, 735 [76 Cal. Rptr. 137]; People v. McVey, 243 Cal. App.2d 215, 217 [52 Cal. Rptr. 269].)"
In People v. Bloom, 270 Cal. App.2d 731 [76 Cal. Rptr. 137], the officer stopped two hitchhiking juveniles carrying bedrolls for the purpose of determining their age. They produced identification showing them to be at least 18 years old but not residents of the county. The officer requested a check by radio to determine if they had a record which would further identify them and also to see if they had any warrants. They argued that the officer had no right to detain them while waiting for a radio check on the authenticity of their identification and that therefore evidence which was obtained during this detention was not admissible. The court held at page 735: "There was nothing unreasonable about the officer's calling for a check-up on appellant and Johnson or in detaining them a few moments while awaiting a report."
In People v. Wickers, 24 Cal. App.3d 12 [100 Cal. Rptr. 732], police officers were patrolling an area in which there had recently been numerous robberies. The defendant was observed parked at a service station lot in this high crime area for "some time"; the officer approached the defendant's vehicle and asked him why he was parked and took his driver's license. He told the defendant to remain where he was and ran a warrant check. The court held at page 16: "Wickers' initial detention, effected prior to the arrival of the second vehicle, was lawful, if in fact it was a `detention.' The interference with Wickers' right to privacy (see People v. Woods, 6 Cal. App.3d 832, 835-836 [86 Cal. Rptr. 264]) was minimal. [Officer] Foland explained to him the reason for the very inquiry he was making, having *948 first ascertained from the station attendant that Wickers was conducting no business on the premises. Wickers was not told to leave his vehicle and was not frisked. He was, however, told to remain at the location while the warrant check was being run. Given the fact of two recent robberies in the area to which the police had been alerted, the time of night, and the fact that Wickers was parked at the station, Foland's decision to run a warrant check on Wickers was justified. The resulting detention was lawful since Wickers' activity in parking at the station was under the circumstances sufficiently unusual, and its connection to a possibly impending robbery sufficiently apparent, to warrant police investigation. (People v. Henze, 253 Cal. App.2d 986, 988 [61 Cal. Rptr. 545].)" (Fn. omitted.)
In People v. Gravatt, 22 Cal. App.3d 133 [99 Cal. Rptr. 287], an officer on patrol in a high crime area at approximately 10 a.m. observed two men standing next to a car. The trunk of the car was open and a television set was in the trunk. As the officer drove up, the men, apparently seeing the officer, shut the trunk and started to walk away. The officer called them back and asked them "whose stuff was in the back of the car." The officer asked if he could look in the trunk. The defendant contended that this was an illegal detention. The court held at page 136: "We need not pass upon the question whether a `detention' in fact occurred. Under the Fourth Amendment the police officer's conduct was illegal only if it was `unreasonable.' Whether it was unreasonable depends on all the facts and circumstances  the total atmosphere of the case. (People v. Ingle, 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].) While a detention of a citizen by a police officer based on a `mere hunch' is unlawful, if there is a rational suspicion that some activity out of the ordinary is taking place, and some suggestion that the activity is related to crime, a detention is permissible. (Irwin v. Superior Court, 1 Cal.3d 423, 427 [82 Cal. Rptr. 484, 462 P.2d 12]; ... People v. Manis, 268 Cal. App.2d 653, 661-662 [74 Cal. Rptr. 423].) And, of course, the degree of restraint involved in a `detention' (here the restraint, if any, was minimal) is an important consideration in determining reasonableness." (Italics in original.)
We need not decide if there was a detention in the case at bench, but, assuming that there was, it was reasonable under the facts and circumstances of this case. (2) In determining the reasonableness of a detention, we must balance the community's interest in law enforcement against the invasion of the interests of the individual. (Terry v. Ohio, 392 U.S. 1, 20-21 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868]; People v. Mickelson, 59 Cal.2d 448, 452 [30 Cal. Rptr. 18, 380 P.2d 658].) The inconvenience to defendant was minimal. Defendant gave no indication that he was going anywhere when the officer stopped to question him. He had been parked *949 in front of 427 North Coronado for an unusual period of time for apparently no good reason. The conversation with Officer Robleto was very brief. After defendant stated that he lived at 427 North Coronado but said he had no identification which would show that, Officer Robleto's request to see some identification was reasonable. On receiving defendant's driver's license and observing that it showed an address different from what he had told Officer Robleto, it was reasonable under the total circumstances for Officer Robleto to make further investigation by checking for warrants. If defendant actually had been residing at 427 North Coronado, it would be reasonable to expect him to be able to produce something from the residence to show that he lived there. Defendant made no effort to do so nor did he indicate in any way that he could. The time to make the warrant check was 30 seconds or less. Defendant was seated on a motorcycle with the motor running, stopped in front of 427 North Coronado. The 400 block of Coronado was Officer Robleto's assigned patrol area. The officer had never seen defendant in the neighborhood before. The area was a high crime area and there had been recent crimes involving persons on motorcycles and the theft of motorcycles.
Officer Robleto's obligation to investigate and his authority to do so are well stated in People v. Courtney, supra, 11 Cal. App.3d 1185, 1189-1190: "It is now established law `that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning.' (People v. Mickelson, 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658]; see also Terry v. Ohio, supra, 392 U.S. 1, 22 [20 L.Ed.2d 889, 906]; People v. One 1960 Cadillac Coupe, 62 Cal.2d 92, 96 [41 Cal. Rptr. 290, 396 P.2d 706].) `While the circumstances which justify temporary detention may be bewilderingly diverse' (People v. Manis, 268 Cal. App.2d 653, 659 [74 Cal. Rptr. 423]), such a detention is proper when the circumstances are such as would indicate to a reasonable police officer that such a course is necessary to the proper discharge of his duty. (People v. One 1960 Cadillac Coupe, supra, pp. 95-96; People v. Manis, supra, p. 659). `The rationale of all these decisions is that an officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain *950 all the particularized perceptions which may have been so meaningful at the scene.' (People v. Bryant, 267 Cal. App.2d 906, 909 [73 Cal. Rptr. 505]; People v. Cowman, 223 Cal. App.2d 109, 117 [35 Cal. Rptr. 528].)" (Italics added.)
Defendant relies heavily on Irwin v. Superior Court, 1 Cal.3d 423 [82 Cal. Rptr. 484, 462 P.2d 12], and in particular on the statement, "Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful." (P. 427.) Later cases have held that the court in Irwin did not intend a literal construction of that language. This question was very ably analyzed and discussed by Justice Elkington in People v. Superior Court (Acosta), 20 Cal. App.3d 1085, at page 1089 [98 Cal. Rptr. 161]: "If the statement of Irwin is to be literally construed, Acosta's argument must be accepted. Its narrow language can only mean that to justify any police detention the facts apparent to the officer, weighed against the probability of innocence, must preponderantly suggest criminal activity of the suspect. But such a construction would bring a novel concept into otherwise settled rules relating to permissible police detention. It would equate the right to so detain with reasonable or probable cause for an arrest.... [¶] So construed, the language of Irwin is in deep conflict with settled authority, both state and national." (Italics in original.) The court went on to hold at page 1091 that: "We think the true rule is stated elsewhere in Irwin where the court says (at p. 427): `[A] detention based on "mere hunch" is unlawful ... even though the officer may have acted in good faith.... "There must be a `rational' suspicion by the peace officer that some activity out of the ordinary is or has taken place ... some indication to connect the person under suspicion with the unusual activity ... [and] some suggestion that the activity is related to crime."'" People v. Gale, 9 Cal.3d 788, at pages 797-798 [108 Cal. Rptr. 852, 511 P.2d 1204], clearly supports this interpretation of Irwin. (See also People v. Gravatt, supra, 22 Cal. App.3d 133, 136-137; People v. Orr, 26 Cal. App.3d 849, 858 [103 Cal. Rptr. 266].)
The Supreme Court in Gale also cited People v. Rosenfeld, 16 Cal. App.3d 619, at page 623 [94 Cal. Rptr. 380], with approval, stating as follows: "In that case two officers were patrolling an alley behind apartments with open garages in an area where there had been a number of auto burglaries. The officers spotted defendant and asked his reason for being there. Defendant responded that he was looking for a friend, but that he did not know where the friend resided. One officer continued the interrogation of defendant while the other sought to find the friend as well as to check nearby buildings and vehicles. In discussing the legality of the detention the court stated `it is apparent that what the officers were attempting to do was carry *951 out an on-the-scene investigation in a high crime rate area of the activities of a person who they suspected might be breaking into parked vehicles. It is a reasonable inference that the officers were attempting to prevent the commission of a crime by a timely investigation of [a] brief duration.'" (9 Cal.3d at p. 798, italics in original.)
The cases cited by defendant are not persuasive.[4] In People v. One 1960 Cadillac Coupe, 62 Cal.2d 92 [41 Cal. Rptr. 290, 396 P.2d 706], which defendant cites, the only basis on which the investigation was extended to the accused was that his car was parked nearby and that he looked untruthful and as though he did not belong in a Cadillac. Furthermore, as pointed out by the court in People v. Blackmon, 276 Cal. App.2d 346, at page 349 [80 Cal. Rptr. 862], in referring to One 1960 Cadillac Coupe, supra, "the trial court found the conduct [of the police] was unreasonable; ..." The trial court in the case at bench found Officer Robleto's actions to be reasonable, and we agree.
The judgment is affirmed.
Kaus, P.J., and Hastings, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied May 8, 1974.
NOTES
[1] Defendant at no time claimed to be waiting for anyone nor did he offer any other explanation.
[2] The record does not show what address was stated on defendant's driver's license but we can infer that it was not 427 North Coronado from his statement that he had no ID with that address.
[3] Although the record does not so indicate, counsel for defendant in his argument at the Penal Code section 995 hearing stated that the officer "had patted [defendant] down initially, but apparently he missed that [the gun]."
[4] People v. Triggs, 8 Cal.3d 884 [106 Cal. Rptr. 408, 506 P.2d 232]; Remers v. Superior Court, 2 Cal.3d 659 [87 Cal. Rptr. 202, 470 P.2d 11]; and Cunha v. Superior Court, 2 Cal.3d 352 [85 Cal. Rptr. 160, 466 P.2d 704], all involved a question of probable cause for arrest, the standard for which is higher than for a detention.

In People v. Moore, 69 Cal.2d 674 [72 Cal. Rptr. 800, 446 P.2d 800]; People v. Henze, 253 Cal. App.2d 986 [61 Cal. Rptr. 545]; and Barber v. Superior Court, 30 Cal. App.3d 326 [106 Cal. Rptr. 304], the factual situations support the courts' conclusions that the defendants' detentions were based on mere "hunch" or "speculation" and not on a rational suspicion or suggestion of criminal activity, and thus are distinguishable from the instant case.