[Crim. No. 25363. Second Dist., Div. Five. Dec. 13, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM WHEELER, Defendant and Appellant.

**COUNSEL**

Herbert F. Blanck, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, Acting P. J.** — By amended information, defendant was charged with burglary (Pen. Code, § 459), grand theft (Pen. Code, § 487, subd. 1), and receiving stolen property (Pen. Code, § 496), and two prior felony convictions of defendant were alleged. He pled not guilty to each of the three counts and denied the alleged priors. After a de novo hearing, his motion to suppress evidence under Penal Code section 1538.5 was denied. Thereafter he entered a guilty plea to the charge of receiving stolen property. On motion of the prosecution, the other charges were dismissed and no finding was made as to the priors. Defendant was placed on five years' probation, subject to special conditions, one of which was that he spend a stated period of time in the county jail. This appeal followed.

At 4 p.m. on October 2, 1973, Los Angeles Police Officers McGaff and Pettril, in plainclothes and in an unmarked police vehicle, were patrolling in the area of 78th Street and Central Avenue. As they passed the alley between 78th and 79th Streets, they observed a Buick car parked in the alley with its trunk-lid open. Within seconds of first seeing the Buick, two men (defendant and codefendant)[1] were seen emerging from between two residences, each carrying a cardboard box, walking to the open trunk. A portion of a typewriter carriage was protruding and a cord was hanging from the box which defendant was carrying. Because of the large size of the box, the hanging cord, and the protruding typewriter carriage, McGaff believed that the box contained a large commercial-type electric typewriter used in businesses. The two men placed the boxes and their contents inside the trunk. After the lid was shut, defendant drove the car to his residence, a short distance[2] away. The police followed defendant, parking behind the

---

[1]Codefendant is not a party to this appeal.

[2]McGaff testified: "They proceeded eastbound to the [dead end of the alley] and then made a right-hand turn and proceeded southbound to 79th Street, where they

Buick when it stopped in the driveway of the 78th Street residence. They ordered the occupants[3] of the Buick out of the car, and defendant and co-defendant were separately interrogated. Without benefit of the *Miranda* warning, defendant was asked about his presence in the alley, and he denied being there. When asked about the placing of items in the car trunk, defendant denied having placed anything in the trunk; he stated the car was a borrowed one and he had no trunk key. The officer removed the keys from the ignition switch and asked if there was any objection to his trying a certain key in the trunk lock, and defendant replied. "No, go ahead." The key opened the trunk, and the typewriter and a tape recorder were observed.

Officer McGaff testified that he knew the area involved was a high crime area where many burglaries had occurred. He knew that business establishments fronted on Central, but that 78th and 79th Streets were residential.

■ The first contention of defendant is that he was unlawfully detained since there was nothing unusual or suspicious about the placing of boxes in the car trunk. In argument, defendant contends that the initial approach of the police to the automobile, the ordering of the occupants from the car, and the questioning of the occupants were illegal in that there did not exist the requisite suspicious circumstances to warrant even a temporary detention. We disagree.

There is no dispute as to the applicable law; only the application of the facts are argued. We conclude that—even during daylight hours—here, the given circumstances of the high crime area, the parked car in a little-travelled alley with its trunk door open, the emergence of two men from between residences each carrying boxes, one obviously containing a large commercial-type typewriter, the placing of those boxes and their contents in the privacy of a closed trunk, and then driving them to a residence 150 or 200 feet away provided adequate suspicious circumstances to justify a temporary detention for the purpose of inquiry. (See *People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658].) The argument that the observations of the officers were consistent with innocent activity fails when there are added the elements of the high-crime area, the place from which

made a left-hand turn and went eastbound on 79th to Central, where they made a left-hand turn northbound to 78th, where they made another right hand turn eastbound on 78th and pulled into a residence. I believe it was 118 East 78th Street." "I'd estimate [that the distance between where the car was parked in the alley and the residence to which defendant drove was] I'd say anywhere from 150 to 200 feet."

[3]In the back seat of the car was a female who apparently was not involved in the charges here.

the men appeared, and the type of machine which was seen. (*People* v. *Higbee*, 37 Cal.App.3d 944, 947-950 [112 Cal.Rptr. 690].)[4]

■ Defendant's second contention is that he had a right not to incriminate himself and therefore his *Miranda* rights should have been given to him before any interrogation. Again we disagree. Once it is determined that there was sufficient factual knowledge possessed by the officers to warrant the temporary detention to investigate, it necessarily follows that the inquiry which took place here was well within the permissive investigatory limits. (*People* v. *Manis*, 268 Cal.App.2d 653, 667-668 [74 Cal.Rptr. 423].)

■ The final contention of defendant is that the evidence found in the trunk was obtained as the result of an unreasonable search and seizure. There is no merit to such contention. Whether defendant intended to give his consent is not determinative of the question. The officer had a reasonable right to conclude that defendant gave his consent when he stated he had no objection to the officer's trying the key in the trunk lock. We further conclude that the knowledge of facts which the officer had at that point of the investigation would have entitled him to open the trunk absent defendant's consent because the officer had already observed what he reasonably believed to be stolen property being placed in the car trunk. It was not a search for an unknown article, but rather an act to effect the taking into custody evidence which had been seen. (See *People* v. *Dumas*, 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208].) The seizure may be justified under either of two theories: (1) the theory of *Carroll* v. *United States*, 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790] that vehicular mobility presented what was tantamount to exigent circumstances which permit a search without a warrant where probable cause exists that the vehicle contains contraband; and (2) that there is no search problem at all because the officer had probable cause to believe that what he had seen in plain view and in defendant's possession was contraband and he had seen the place where defendant had deposited it. ■ Where there is probable cause to believe that an item observed in plain and open view is evidence of the crime, that evidence may be *seized* where no *search* is required. When an officer sees an item which he has probable cause to believe is contraband dposited out of sight but at a specific location which he also observes, his act to effect *seizure* of the suspected contraband is not a *search*. (See *People* v. *Stewart*, 34 Cal.App.3d 695, 700-701 [110 Cal.Rptr. 227].) The ob-

---

[4]The majority of the cases on which defendant relies in the instant case were likewise relied upon by the defendant in *Higbee* and analyzed in that opinion.

served "hiding" or "depositing" of suspected contraband makes the place of deposit tantamount to a place which is in "plain and open view." (Cf. *People* v. *Doherty,* 67 Cal.2d 9, 21-22 [59 Cal.Rptr. 857, 429 P.2d 177].) Like an Easter egg hunt, the game is over when the participants see where the eggs have been placed.

The officer had probable cause to arrest at the time he opened the trunk, and its opening—even without consent—was incident to an arrest. The fact that the arrest as such transpired immediately after recovery of the stolen items does not alter the officer's right to seize them incident to a lawful arrest. We conclude, however, that defendant did give his consent and was not compelled by the appearance of authority.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.