[Crim. No. 2292. Fifth Dist. Oct. 12, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN EUGENE PODESTO et al., Defendants and Appellants.

**COUNSEL**

Edward L. Lascher, under appointment by the Court of Appeal, Richard C. Gilman, Wendy Cole Wilner, Donald C. Smaltz, Gregory A. Wedner, Taylor & Taylor and Edward T. Taylor III for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Vincent J. Scally, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRANSON, J.—**

### STATEMENT OF THE CASE

Appellants were jointly charged by information with violation of Health and Safety Code section 11359, possession of marijuana for sale. Appellant Podesto was also charged with violation of Health and Safety Code section 11360, transportation of marijuana. Following denial of their respective 1538.5 motions to suppress, Podesto pleaded guilty to possession of marijuana for sale, and the charge of transporting marijuana was dismissed in the interests of justice. Appellant Sproul pleaded guilty to violation of Health and Safety Code section 11357, unauthorized possession of marijuana, a felony, a lesser included offense of possession of marijuana for sale. Appellants' applications for probation were denied, and they were sentenced to prison. Timely notices of appeal were filed pursuant to Penal Code section 1538.5, subdivision (m).

### FACTS

At approximately 1:30 a.m. on August 6, 1974, Deputy Sheriffs Bell and Parker of the Stanislaus County Sheriff's office observed a brown

Mustang being driven by Podesto, with Sproul as the passenger, come to a stop at the intersection of Geer Road and Highway 132 in Stanislaus County. The officers were parked approximately 100 yards from the intersection which was lit by a large street lamp. They were able to see and hear the Mustang, and by the sound and rate of acceleration as it left the intersection the officers believed it would exceed the speed limit. They gave pursuit.

In less than one-eighth of a mile from the intersection, the Mustang was traveling faster than 55 miles per hour. Deputy Parker, who was driving, estimated that he had to drive at a speed of 100-110 miles per hour to catch up with the Mustang; he estimated its speed at 95-100 miles per hour during the pursuit.

After chasing the Mustang for about two and one-half miles, the officers observed the vehicle suddenly swerve to the right off the paved portion of the road and Deputy Bell observed "several hundred pieces" of "some type of paper substance" being thrown from the passenger side of the Mustang. Bell had no idea what the paper substance was when he made his observation, but he did not believe it was contraband.

The officers thereafter sounded their siren and the Mustang came to a stop. When the officers approached the vehicle they accused appellants of speeding and throwing something from the car. The officers requested and received identification from appellants, and also took the ignition key from the car.

Prior to coming to a stop, the officers had requested a backup unit so that they could go back along the highway to see what had been thrown from appellants' vehicle. The backup officers arrived shortly, and were placed in charge while Officers Bell and Parker left to search for the debris which Bell had seen thrown from the car.[1] About five minutes after Bell and Parker had left, Deputy Johnson, who had arrived with the backup unit, was standing next to the Mustang and, through an open window, observed marijuana spread out on the rear seat. He was able to see into the Mustang because his patrol car had its spotlight and headlights shining into the rear of the Mustang. Johnson waited until Bell and Parker returned about 20 minutes later, and told them about his

---

[1]The officers searched for 20-25 minutes down the road for approximately three-fourths of a mile but were unable to find any evidence of the debris thrown from the Mustang.

observations which Officer Bell verified by making his own observation of the marijuana from outside the Mustang.

The officers ordered Podesto and Sproul out of the car and entered the passenger compartment, finding approximately one-half of a baggie of marijuana on the rear seat and floorboard. They also noticed a strong smell of marijuana coming from the back portion of the car. They lifted the back seat off its brackets and pulled forward a section of cardboard and observed some gunnysacks which appeared to contain bricks of marijuana in the back of the trunk. The officers then opened the trunk finding two gunnysacks containing approximately 70 pounds of marijuana.

### NO ILLEGALITY IN THE DETENTION AND ARREST OF APPELLANTS AND THE SEARCH OF THE MUSTANG

Preliminarily, we note that in a suppression proceeding under section 1538.5, the power to judge the credibility of the witnesses, to resolve any conflicts in the testimony, to weigh the evidence, and to draw factual inferences is vested in the trial court. On appeal, all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Nonetheless, the constitutionality of a search and seizure is a question of law, and ". . . it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*People* v. *Lawler, supra,* 9 Cal.3d at p. 160.)

The pursuit of a motorist to see if he exceeds the speed limit is a commonplace and legitimate police activity. Thus, the officers were fully justified in stopping appellants for speeding and littering, both of which were misdemeanors committed in their presence. (Pen. Code, § 836, subd. 1.)

The detention permitted to issue a citation for minor traffic violations, such as speeding and littering, however, is limited in scope. The officer may require the driver to identify himself, produce his driver's license and the registration certificate for the vehicle, and he may interrogate the driver with respect to the violations which he has observed. Absent other suspicious circumstances, the officer may not search the driver or the vehicle, nor may he detain the driver for

investigation of matters unrelated to the traffic stop. (*People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 201-202 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 815 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) Under these rules, the speeding and littering did not justify detaining appellants beyond the time necessary to issue citations for those offenses.[2]

■ Whether the officers were justified in detaining appellants for a purpose other than citing them for speeding and littering is the critical question. For the reasons hereafter explained, we hold that they were so justified and that the detention was reasonable, both as to scope and duration.

■ It is well established that circumstances short of probable cause to make an arrest may warrant a temporary detention for purposes of investigating possible criminal activity. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868, 1880].) Before such a detention may be undertaken, however, there must be a rational suspicion that something out of the ordinary has taken place, that the activity is related to a crime, and that the person detained is connected to the activity. (*Irwin* v. *Superior Court* (1969) 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12].) ■ The test in determining the validity of a temporary detention is to inquire whether the circumstances "are such as to indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of the officer's duties, . . ." (*People* v. *Robles* (1972) 28 Cal.App.3d 739, 744 [104 Cal.Rptr. 907].) The circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the officers. (See *Irwin* v. *Superior Court, supra*, 1 Cal.3d at p. 426; *People* v. *Moore* (1968) 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800]; *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].) Moreover, where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is

[2]Clearly Podesto's driving at speeds up to 100 miles per hour was more than a "minor" traffic violation and probably would have been considered as "reckless driving" giving the officers the option, in their judgment, either to issue a citation or to arrest Podesto and to take him before the nearest magistrate. (Veh. Code, §§ 23103, 40303.) However, the officers apparently were not interested in charging Podesto with reckless driving, but, rather, wanted to explore the nature of the substance thrown from the vehicle before issuing citations for the Vehicle Code violations. In any event, the reckless driving, standing alone, would not give probable cause to search the vehicle. (*People* v. *Superior Court (Simon), supra*, 7 Cal.3d at p. 202.)

unlawful. (*Irwin* v. *Superior Court, supra,* 1 Cal.3d at p. 427; cf. *People* v. *Superior Court (Acosta)* (1971) 20 Cal.App.3d 1085, 1088 [98 Cal.Rptr. 161]; *People* v. *Higbee* (1974) 37 Cal.App.3d 944, 950 [112 Cal.Rptr. 690].)

■ Here, the circumstances confronting the officers clearly gave rise to an objectively reasonable suspicion on their part that something out of the ordinary had taken place involving criminal activity other than the traffic violations. The lateness of the hour, the excessively high and dangerous rate of speed at which appellants' vehicle had traveled, the sudden swerving and throwing of a large amount of paper from the car, while perhaps not establishing probable cause to search the vehicle, or to arrest appellants for any crime other than the traffic violations, nonetheless sufficed to give the officers cause to suspect that other criminal activity was afoot. It cannot be said that appellants' conduct from the time they left the Geer Road intersection to the time of the stop was as consistent with innocent as guilty activity, as would be the case where a motorist exceeds the speed limit by 5 or 10 miles per hour and throws a few pieces of paper out of his car.

A reasonable inference arises from appellants' conduct that they had observed the officers' patrol car at the Geer Road intersection and were attempting to flee the area; that when they saw the lights of the patrol car gaining on them they swerved off the road to dispose of the paper. It is common knowledge that marijuana cigarettes are rolled in thin sheets of paper which would match Bell's description of the paper thrown from appellants' vehicle. Under the circumstances, it reasonably can be said that the officers would have been derelict in their duty if they had not attempted to ascertain the nature of the substance thrown from the vehicle.

Appellants contend that because Officer Bell said he didn't believe the paper was contraband he and Officer Parker had no legitimate reason to check it out. This contention, however, ignores the context in which the statement was made. Bell had reference only to the paper thrown from the automobile, and, logically, the paper probably was not contraband. Bell's testimony, however, does not foreclose a reasonable suspicion on the officers' part that other criminal activity was in progress, i.e., that there might be contraband in the car apart from the paper. Bell's testimony both at the preliminary hearing and at the motion to suppress leaves room for such an inference: at the preliminary hearing Bell was asked the following: "Q. Officer Bell, did you believe what was thrown

from the car was contraband or simply scraps of paper? . . . A. I didn't know exactly what it was, scraps of paper or some type of debris of that nature. Q. Did you believe at that time that it was contraband, yes or no? A. No." At the suppression hearing, the following testimony was given. "Q. . . . Now : . . . you indicated you did not believe that the substance was contraband, is that correct? A. Yes, I couldn't say that it was contraband, I had no idea that it was. Q. It looked like it was paper, though? A. Yes."

In determining the validity of a temporary detention, we must apply an *objective* standard to the officers' perception of events. (*Irwin* v. *Superior Court, supra,* 1 Cal.3d at p. 426.) Regardless of Bell's inability to identify the nature of the paper substance, the events perceived by the officers prior to the stop support an objectively reasonable suspicion that appellants had been or were involved in some criminal activity apart from speeding and littering. (See *People* v. *Robles, supra,* 28 Cal.App.3d 739, 744.)

The objective evaluation of the officers' perception of events presupposes, of course, that the officers subjectively believed that such criminal activity had taken or was taking place. (See *People* v. *Miller* (1972) 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228]; *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977]; *People* v. *Superior Court (Simon), supra,* 7 Cal.3d at p. 198.) This belief reasonably can be inferred from the officers' conduct in calling a backup unit and engaging in a 25-minute search along a deserted highway at 1:30 in the morning.

We further point out that appellants were detained only five minutes before Officer Johnson observed the marijuana in plain sight in the back seat of the Mustang. At this point he had probable cause to arrest appellants and to search the vehicle, and the fact that, after observing the marijuana, he waited some 20 minutes for Officers Bell and Parker to return before conducting the search is immaterial.

Appellants' reliance on *People* v. *Gonsoulin* (1971) 19 Cal.App.3d 270 [96 Cal.Rptr. 548] is misplaced. There, a police officer stopped an automobile because the rear license plate was smudged, obscuring the state of origin and some of the numbers. After investigation of the

smudging and verification of the vehicle's ownership and the driver's identity, the officer "requested" the driver to turn around and drive some seven miles back in the direction from which he had come to a service station to enable the police to investigate the status of a credit card found in the driver's wallet. On reaching the service station the police made a search of the automobile and its occupants, found narcotics and arrested the occupants. We reversed, holding that the order to drive the automobile to the service station amounted to an arrest without probable cause and that the evidence of narcotics was arrived at by exploitation of that illegal detention.

The distinguishing feature in *Gonsoulin* is that the only evidence of possible criminal activity to support the detention was the possibility that the credit card had been stolen. We pointed out that such a suspicion was nothing more than a mere "hunch" on the officer's part because in this credit-card age the use of someone else's credit card with the owner's consent is not an unusual circumstance and is as consistent with innocent as guilty activity.

We conclude, therefore, that appellants' detention at the scene of the traffic stop while Officers Parker and Bell sought to determine the nature of the debris thrown from the vehicle was lawful.

 The next question is whether the officers had probable cause to believe that the trunk of the Mustang contained contraband. Probable cause for a search exists where an officer is aware of facts that would lead a man of reasonable caution to believe or conscientiously entertain a strong suspicion that the object of the search is in the particular place to be searched. (*Carroll* v. *United States* (1925) 267 U.S. 132, 162 [69 L.Ed. 543, 555, 45 S.Ct. 280, 288, 39 A.L.R. 790]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 885 [109 Cal.Rptr. 304, 512 P.2d 1208].) Probable cause to search the interior of a car is not necessarily sufficient to justify the search of the trunk. (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 568 [128 Cal.Rptr. 641, 547 P.2d 417].) As stated in *Wimberly, supra,* "A search based on probable cause which reasonably only tends to support the inference that contraband or evidence will be found in the passenger compartment will be of intolerable intensity and scope if expanded to include a closed trunk. In such a situation there must be some specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk. [Citations.]" (16 Cal.3d at p. 568.)

In the instant case, the officers, while standing outside the Mustang, observed marijuana in plain view on the rear seat, thereby giving probable cause to search the passenger compartment of the car. When they entered the car, they found scattered on the back seat and floorboard approximately one-half of a baggie of marijuana. This was more than a miniscule amount of marijuana. (Cf. *People* v. *Gregg* (1974) 43 Cal.App.3d 137 [117 Cal.Rptr. 496].) The officers also noticed a strong odor of marijuana emanating from the back portion of the vehicle. From these facts the trial court could reasonably infer that the officers believed that the strong odor of marijuana originated from something other than the small quantity of marijuana found on the back seat and floorboard, thereby giving them probable cause to search behind the rear seat and into the trunk area. (See *Wimberly* v. *Superior Court, supra,* 16 Cal.3d 557, 571; *People* v. *Cook* (1975) 13 Cal.3d 663, 668 [119 Cal.Rptr. 500, 532 P.2d 148]; *People* v. *Gale* (1973) 9 Cal.3d 788, 793, fn. 4 [108 Cal.Rptr. 852, 511 P.2d 1204].)

Furthermore, the quantity and location of the marijuana found in the passenger compartment and the strong odor emanating from the rear of the car, together with the prior circumstances of appellants' attempt to flee from the officers by driving at speeds close to 100 miles an hour, the sudden disposal of a large quantity of possible marijuana cigarette paper from the car, all combine to suggest the reasonable possibility that the vehicle was being used to transport marijuana. (See *Wimberly* v. *Superior Court, supra,* 16 Cal.3d at p. 573; see also *People* v. *Hill* (1974) 12 Cal.3d 731, 748 [117 Cal.Rptr. 393, 528 P.2d 1], where it was held reasonable to assume the defendants were transporting marijuana where a desperate attempt to avoid apprehension was followed by the plain view discovery of contraband in the car. See also *People* v. *Martin* (1956) 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Cook, supra,* 13 Cal.3d 663, 670.) On the basis of the foregoing, the officers had probable cause to believe that marijuana was in the trunk of the automobile.

### REFILING OF CRIMINAL COMPLAINT AGAINST APPELLANTS WAS PROPER[3]

Podesto's contention that he was placed in double jeopardy by the refiling of the criminal complaint is without merit. The bar of res

---

[3]The first complaint against appellants was filed in August 1974 and a preliminary hearing was held on September 12, 1974, before Judge Deabenderfer. The search of Podesto's car was ruled illegal and the evidence was suppressed and the complaint dismissed. A new complaint was filed in a second preliminary hearing held on November 22, 1974, before Judge Reid in which the search was upheld and appellants were held to answer.

judicata does not apply to a dismissal of a criminal complaint after a preliminary hearing. As stated in *People* v. *Bracamonte* (1975) 15 Cal.3d 394, at page 399 [124 Cal.Rptr. 528, 540 P.2d 624]: " 'It is, of course, the rule in this state that the magistrate's order dismissing a felony complaint is not a bar to another prosecution for the same offense, either by filing a subsequent complaint, or by seeking a grand jury indictment. [Citations omitted.]' (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 666 [108 Cal.Rptr. 657, 511 P.2d 609].) 'This rule specifically applies when the previous dismissal was based on the magistrate's conclusion that the evidence was illegally obtained.' (*People* v. *Prewitt* (1959) 52 Cal.2d 330, 340 [341 P.2d 1].)"

■ Sproul's contention that section 1538.5, subdivision (j), precludes refiling of a felony complaint after motion to suppress is granted and the complaint is dismissed absent a new factual showing by the prosecution is similarly without merit. The only judicial limitation on the People's right to file a new complaint after defendant's motion for suppression is granted at a preliminary hearing is that the law will not permit harassment of a defendant through repeated prosecutions for the same offense by presenting the same facts over again in different proceedings. (See *People* v. *Uhlemann, supra,* 9 Cal.3d 662, 669.) Such is not the present case.

### DENIAL OF SPROUL'S APPLICATION FOR PROBATION
### WAS NOT AN ABUSE OF DISCRETION
### NOR A DENIAL OF DUE PROCESS

Sproul's contention on this issue is based primarily on the reference in the probation report to a prior arrest in 1973 for possession of marijuana where the charge was dismissed because of an illegal search and seizure. Sproul also argues that his lack of a prior record, the nonviolent nature of the crime of which he was convicted, and his record as a student and employee are factors which indicate probation should have been granted.

The probation report contains the following information: "On March 3, 1975, this Officer talked with an investigator from the Santa Clara County District Attorney's Office. The investigator informed that on February 8, 1973 agents from the Santa Clara County and San Mateo County Narcotics Enforcement Units made an arrangement to purchase a hundred pounds of marijuana. They stated that during the incident the

defendant and another subject came to a residence where the transaction was taking place. He stated that the defendant was operating the vehicle. As the officers had information to believe that the vehicle contained contraband, they searched the vehicle. During the search, the officer discovered 14 bricks of marijuana in the vehicle. It was noted that on March 22, 1973 the matter was dismissed in the San Jose-Milpitas Judicial District due [to] an illegal search and seizure."

In recommending that probation be denied, the probation officer stated: "It is felt that probation and/or a local period of incarceration should not be granted. It is this Officer's feeling that such a disposition would not be [e]ffective in discouraging the defendant not to return to the drug sub-culture and take advantage of the enormous profit available while dealing in drugs. Obviously, after his participation in the offense in 1973 he did not feel it necessary to discontinue his activity in transporting or selling drugs. The defendant assumed the risk when he decided to participate in the offense and he was never discouraged by the laws governing illicit drug dealings. His involvement in the offense poses a serious threat to the community as the marijuana confiscated would eventually be distributed into the community to those people who in turn victimize the community in order to obtain adequate funds to purchase the marijuana. It is felt that such behavior can not [sic] be tolerated by the Court and that it should be dealt with in a punitive manner by sentencing the defendant to the Department of Corrections. It is this Officer's opinion that the defendant was deeply involved in the transporting and sales of marijuana and that by removing him from the community it will, hopefully, curtail some of the flow of large quantities of marijuana being distributed into the community."

The trial judge stated that he had read and considered the probation report. With regard to Sproul's prior arrest, the court stated: "I don't think the import of why the reason was dwelled on for the length that it was, it wasn't much, but it certainly illustrates through the criminal proceedings that have been instituted against him the seriousness of being involved with marijuana, that would certainly call his attention to the proceedings. I think that's really the import of it.

". . . . . . . . . . . . . . . . . .

"I'm not presuming he was guilty or anything in connection with that. The only thing that brings to my mind is that he has been arrested for a marijuana offense, proceedings had been instituted, and they were

dismissed. All that means to me is the seriousness of being involved with it was called to his attention. That's all it means to me. Obviously he wasn't convicted. He's presumed to be innocent. The case was dismissed. That's the end of it."

In denying probation, the court observed, ". . . we're not dealing with a normal marijuana case, we're dealing with a marijuana case in which there's apparently a street value of $11,000 involved."[4]

■ Probation is not a right but a matter of judicial clemency within the sentencing judge's sole discretion. Thus, an order denying probation will not be reversed in the absence of a clear abuse of that discretion. (*People* v. *Label* (1974) 43 Cal.App.3d 766, 776 [199 Cal.Rptr. 522].) Judicial discretion " '. . . implies absence of arbitrary determination, capricious disposition or whimsical thinking.' " (*In re Cortez* (1971) 6 Cal.3d 78, 85 [98 Cal.Rptr. 307, 490 P.2d 819].) And, as stated in *People* v. *Gimenez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65], ". . . in the absence of a clear showing that its sentencing decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate sentencing objectives . . . ."

■ In exercising its discretion, the court should consider all the attendant facts and circumstances as disclosed by the evidence and the probation officer's report. (*People* v. *Ingram* (1969) 272 Cal.App.2d 435, 439 [77 Cal.Rptr. 423].) This includes the defendant's prior record, his attitude toward narcotics, and whether he has been deceitful with the probation officer. (*People* v. *Plummer* (1963) 222 Cal.App.2d 280, 281 [35 Cal.Rptr. 53]; *People* v. *Lockwood* (1967) 253 Cal.App.2d 75, 82 [61 Cal.Rptr. 131]; *People* v. *Jackson* (1948) 89 Cal.App.2d 181, 182 [200 P.2d 204].)

The fact that Sproul's prior arrest did not result in a trial and conviction does not mean that the trial court could not consider the arrest in deciding whether to place him on probation. The probation officer discussed the matter with an investigator from the Santa Clara District Attorney's office. The statements to the probation officer indicated that Sproul was involved in the prior crime. Importantly, Sproul not only did not challenge the accuracy of the information contained in the report concerning his arrest and involvement in the prior crime, but conceded its accuracy as indicated by the following

[4]The court's statement was based on the probation officer's report which quoted from police reports concerning the street value of the marijuana.

statement at the sentencing hearing: "THE COURT: Mr. Haight, the prior criminal proceedings is accurately reflected in the report, wasn't it? "MR. HAIGHT: We don't argue over that. I don't think he should be punished for that."

█ The fact that the judge relied on the statements in the report concerning the street value of the marijuana, which was not supported by any testimony or other evidence, does not mean that the trial court abused its discretion. Again, Sproul failed to challenge the statement as to the value of the marijuana although he had the opportunity to do so. (Pen. Code, § 1204; *People* v. *Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832]; *People* v. *Lockwood, supra,* 253 Cal.App.2d 75, 82.) As stated in *In re Beal* (1975) 46 Cal.App.3d 94, 99-100 [120 Cal.Rptr. 11]: ". . . we view with disfavor the attempt to raise for the first time after sentencing the claim that the probation report was inaccurate. . . . There may be situations in which a prisoner is entitled to a new sentencing hearing, but only where he shows that: (1) material false information was (2) relied upon by the sentencing judge, and (3) the defendant had no opportunity at the time of sentencing to correct such false information."

█ While the sentence in this case was extremely severe we cannot hold it to have been an abuse of discretion. Although Sproul was a college student and a good employee he had pleaded guilty to the possession of a sizable quantity of marijuana. His plea amounted to an admission of every element of the crime charged including his knowledge of the presence of the marijuana in the trunk of Podesto's vehicle and his right of control over the contraband. (See *People* v. *Jones* (1959) 52 Cal.2d 636, 651 [343 P.2d 577]; *People* v. *Francis* (1969) 71 Cal.2d 66, 73 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Bowens* (1964) 229 Cal.App.2d 590, 594 [40 Cal.Rptr. 435].) Most importantly, in spite of his guilty plea, Sproul gave a deceitful story to the probation officer when he claimed he was not aware of the marijuana in the trunk of Podesto's vehicle. His convoluted explanation to the probation officer as to why he was with Podesto on the night in question, in the face of his guilty plea, understandably influenced the court in its denial of probation. While another judge well might have placed Sproul on probation, this fact does not make the sentence arbitrary or capricious.

█ Finally, Sproul's argument that the trial court's consideration of the prior charge which had been dismissed on constitutional grounds was a denial of due process also must fail. The judge carefully limited his consideration of the prior arrest to the fact that it put Sproul on notice of

the seriousness and possible consequences of being involved with marijuana. The court stated: "I'm not presuming he was guilty or anything in connection with that. The only thing that brings to my mind is that he had been arrested for a marijuana offense, proceedings had been instituted, and they were dismissed. All that means to me is the seriousness of being involved with it was called to his attention. That's all it means to me. Obviously he wasn't convicted. He's presumed to be innocent. The case was dismissed. That's the end of it."

Appellants' reliance on *Townsend* v. *Burke* (1948) 334 U.S. 736 [92 L.Ed. 1690, 68 S.Ct. 1252] and *United States* v. *Tucker* (1972) 404 U.S. 443 [30 L.Ed.2d 592, 92 S.Ct. 589], is misplaced. In *Townsend,* the court found a denial of due process where a defendant unrepresented by counsel was sentenced and the three prior charges relied upon by the sentencing judge had been either dismissed or the defendant had been acquitted. The Supreme Court noted the absence of counsel and the emphasis placed on the prior charges by the sentencing judge. It concluded that the sentencing court's strong reliance on the false information compelled a remand for resentencing. In *Tucker* the judge gave explicit consideration to the defendant's prior record of three felony convictions. It was later determined that two of the prior convictions were constitutionally invalid having been obtained in violation of the defendant's right to counsel under *Gideon* v. *Wainwright.* The Supreme Court held that under these circumstances the Court of Appeal was correct in remanding the case for resentencing, "For if the trial judge . . . had been aware of the constitutional infirmity of two of the previous convictions, . . . the [defendant's] background would have appeared in a dramatically different light at the sentencing proceeding." (404 U.S. at p. 448 [30 L.Ed.2d at p. 597, 92 S.Ct. at p. 592].) Both *Townsend* and *Tucker* are clearly distinguishable from the case at hand because there has been no showing that the probation officer's report contained false information about Sproul's prior arrest, nor was the constitutional infirmity of the prior charge hidden from the court.

### APPELLANT SPROUL IS ENTITLED TO THE BENEFITS OF AMENDED HEALTH AND SAFETY CODE SECTION 11357 REDUCING THE PENALTY FOR POSSESSION OF MARIJUANA

Health and Safety Code section 11357 was amended by Statutes 1975, chapter 248, section 2, page 641, effective January 1, 1976, reducing the offense of unauthorized possession of marijuana to a misdemeanor. Because appellant's conviction had not become final at the time the

amendment became effective, he is entitled to the benefits of the lesser punishment. (*In re Estrada* (1965) 63 Cal.2d 740, 744 [48 Cal.Rptr. 172, 408 P.2d 948]; *People* v. *Ramirez* (1972) 27 Cal.App.3d 660, 665 [104 Cal.Rptr. 102]; *Bennett* v. *Procunier* (1968) 262 Cal.App.2d 799, 801 [69 Cal.Rptr. 116]; see also Department of Corrections, Administrative Bulletin No. 76/30.)

Since under the amended statute possession of marijuana, regardless of amount, is punishable as a misdemeanor, and the maximum punishment is imprisonment in the county jail for a period of not more than six months and a payment of a fine not exceeding $500 (Health & Saf. Code, § 11357, subd. (c)) and since appellant served almost a year in state prison before the Supreme Court ordered his release on bail in July 1976, he is entitled to credit for time served and immediate release from custody, constructive or otherwise, in connection with his conviction under Health and Safety Code section 11357.

Appellant also is entitled to petition the superior court under Health and Safety Code section 11361.5, subdivision (b) to have the records of his arrest and conviction destroyed.

Appellants' other contentions have been considered and are found to be without merit.

The judgment of conviction as to appellant Podesto is affirmed. The judgment of conviction as to appellant Sproul is reversed and the matter is remanded to the superior court with directions to resentence appellant Sproul for violation of unlawful possession of marijuana, a misdemeanor under Health and Safety Code section 11357, giving appellant credit for time served and ordering his immediate release from custody.

Brown (G. A.), P. J., and Gargano, J., concurred.

A petition for a rehearing was denied November 10, 1976, and the petition of appellant Podesto for a hearing by the Supreme Court was denied December 22, 1976.